## JOHN BARTH, Respondent, v. KATIE BARTH, Appellant.

### St. Louis Court of Appeals, December 3, 1912.

1. **APPELLATE PRACTICE: Divorce: Conclusiveness of Findings of Fact.** Although, in divorce cases, great deference should be paid to the conclusions of the trial judge on evidence given by witnesses who testify before him, the duty is imposed upon the appellate court to pass on the evidence and determine the case on its view of the evidence.

2. **DIVORCE: Trivial Grounds: Necessity of Coming into Court with "Clean Hands."** When it becomes apparent that the true aims of the union of a husband and wife can no longer be achieved by continuing the marital tie, the best interests of society does not demand that it be preserved by mere force of law; but it is the duty of the courts to see that it is not dissolved on slight testimony, for light or trivial causes, or when neither party comes into court with "clean hands."

3. ———: **Both Parties at Fault: "Injured Party."** Where both parties to a divorce suit are at fault, the court will not attempt to find which is the more at fault, but will award neither a divorce.

4. ———: ———: ———: **Sufficiency of Evidence.** In an action by a husband for divorce on the ground of indignities rendering his condition intolerable, evidence *held* to show that defendant had been guilty of such indignities as would warrant the granting of a divorce to plaintiff; evidence further *held*, however, to show that plaintiff had been guilty of indignities toward defendant, and, therefore, that he was not the "injured party," within Sec. 2370, R. S. 1909; and hence it is *held* that he was not entitled to a divorce.

Appeal from St. Louis City Circuit Court.—*Hon. Edwin W. Lee*, Judge.

REVERSED AND REMANDED (*with directions*).

*Jno. B. Dempsey* and *Albert Burgess* for appellant.

(1) A plaintiff in a divorce suit in order to secure a decree of divorce, must be shown, from all the evi-

dence introduced in the trial, to be not only the injured but also the innocent party. Lawlor v. Lawlor, 76 Mo. App. 637; Torlotting v. Torlotting, 82 Mo. App. 192; Webb v. Webb, 44 Mo. App. 229; Coe v. Coe, 98 Mo. App. 472; Nichols v. Nichols, 39 Mo. App. 291. (2) Either husband or wife to obtain relief from bonds that have grown too burdensome must come into court with clean hands. Libbe v. Libbe, 157 Mo. App. 701; Torlotting v. Torlotting, 82 Mo. App. 192.

*Edward W. Foristel* for repondent.

REYNOLDS, P. J.—The respondent here instituted an action for divorce against his wife, the appellant, on the 19th of May, 1910.

It is alleged in the petition that the parties were married in the city of St. Louis, in May, 1895, and lived together as husband and wife until April, 1910. Following the usual averment that during all of the time plaintiff had treated defendant with kindness and affection, plaintiff charges that defendant offered him such indignities as to render his condition intolerable. The indignities set out are that after the first year of the marriage defendant developed a violently jealous disposition and on divers occasions accused plaintiff of infidelity; that after the third year of the marriage on numerous occasions, "the exact dates of which are unknown to this plaintiff, which plaintiff believes to have been about once each month," defendant quarrelled with plaintiff and during the quarrel used foul and profane language toward him, on numerous occasions breaking various articles about the house and throwing dishes at plaintiff. Averring that plaintiff was a merchant engaged in the retail meat and provision business, it is charged that on divers occasions too numerous to mention, defendant would appear at plaintiff's place of business and without reasonable cause abuse the women patrons who happened to be

present in plaintiff's place of business at the time and would accuse them of being intimate with plaintiff; that during the second year of the marriage, "the exact date being unknown to plaintiff," defendant without reasonable cause and while in a violent fit of temper, threw a meat axe through the front window of plaintiff's place of business; that thereafter during the year 1904 plaintiff was compelled to dispose of his business by reason of the habits, acts and practices of defendant as aforesaid. It is further averred that during the year 1909, a sister of defendant came to live with plaintiff and defendant, and defendant, without reasonable cause accused plaintiff of being intimate with the sister; that for a period of three years next before the filing of the petition, "on occasions too numerous to mention," defendant, in the presence of others, threatened to kill plaintiff, on one occasion threatening to cut plaintiff's throat while asleep; that during the month of March, 1910, defendant was continually quarrelling with an emplyee of plaintiff and on one occasion threatened to throw carbolic acid in his face; that on the 15th of March, 1910, defendant at the breakfast table and in the presence of the children of plaintiff and defendant, without reasonable cause, accused plaintiff of being intimate with some Spanish ladies who lived in the neighborhood; that thereafter, on or about the 1st of April, 1910, defendant "forbids the women patrons of plaintiff to talk to plaintiff or to come into his place of business on any purpose." Stating that by reason of the habits, acts and practices of defendant, as before set out, he has suffered great anguish of wind and cannot live in peace and happiness with defendant and that there were born of the marriage two children, John aged fourteen, and Harry aged twelve, and that the defendant is an unfit person to have the care and custody of the children, plaintiff prays for divorce and that he be awarded the care and

custody of the children, the petition containing the proper averment of residence in this city and State.

Admitting the marriage and birth of the children, defendant by her answer denies every other allegation in the petition.

The trial of the cause was quite lengthy and terminated in a finding and judgment in favor of plaintiff, the court also awarding him the custody and control of the children and adjudging the cost of the proceeding against defendant.

We have read all the testimony as presented by the abstract of the appellant with very great care. While conceding that very great deference is to be paid to the conclusions of the learned trial judge on the evidence in a case of this character, he having the witnesses before him and hearing their testimony and being able to determine from the manner of giving the testimony and appearance of the parties and witnesses, the weight to be given to it, the duty is imposed upon us by the law to pass on the evidence and to determine the case on our own view of that evidence as presented to us by the record, a duty which we cannot shirk, even if we had the disposition to do so. This rule of decision was very distinctly announced by our court in Torlotting v. Torlotting, 82 Mo. App. 192, and, while stating the rule with great distinctness, the decision of the trial court was not there followed, a divorce which it had adjudged in favor of the husband as against the wife being set aside and the case dismissed. It is true that that was done more on the application of the principles of law to the facts than on the facts themselves. Nevertheless it is a very clear example of the appellate court refusing to follow the conclusion of the trial court on the facts. That this has always been the rule of decision in this State is shown by the many cases cited in the Torlotting case.

It may appear somewhat banal to call attention to the importance of the marriage contract, a civil con

tract, it is true, under our Constitution and laws, but a contract that lies at the very foundation of society and, in a measure, of government itself. When it becomes apparent that the true aims of the union of a man and woman can no longer be achieved by continuing the marital tie, it can hardly be that the interests of society demand that the union be preserved by mere force of law, but it is for the courts to see to it that that union is not dissolved on slight testimony, nor for either light or trivial causes. Nor is it to be dissolved, however galling its bonds may have become, if neither of the parties to it comes into court with clean hands. It is of the very essence of our statute governing divorce that the party to whom it is awarded is the innocent and injured party. Where both parties are in fault the court, not attempting to weigh with nicely adjusted scales which of the two is the most or the least in fault, will award to neither the relief sought.

Section 2370, R. S. 1909, the section which enumerates the causes for divorce, concludes thus; "The injured party, for any of the causes above enumerated, may obtain a divorce from the bonds of matrimony." This rule, that the divorce is only to be granted to the injured party is further emphasized by the provisions of section 2372, authorizing a divorce in favor of the defendant, it being there provided that "Upon the hearing of the cause, if the court shall be satisfied that the defendant is the injured party, it shall enter judgment divorcing the defendant from the said plaintiff, as prayed in the answer. These provisions have not always been in our statutes regulating the matter of divorce in their present wording. Prior to the Act of March, 12, 1849 (Session Acts 1849, p. 49, chap. 55, 1 R. S. 1855, p. 662, sec. 1), our law provided that "the innocent and injured party" may obtain a divorce. [R. S. 1845, chap. 53, p. 426.] But our Supreme Court in Hoffman v. Hoffman, 43 Mo. 547, held (l. c. 549), referring to the change in the wording of the law, that

"the statute should receive the same construction in this respect as before the change; at least no better character should be required of a party seeking a divorce, and we are not inclined to allow it to a person sustaining a worse one." One of the earlier, if not the first, of the cases on our statute relating to divorce is Ryan v. Ryan, 9 Mo. 535, decided in 1845. Ryan v. Ryan is referred to with approved in Nagel v. Nagel, 12 Mo. 53, decided in 1848. In this latter case, referring to the statute, it is said (l. c. 55): "Thus it is seen that a party applying for a divorce must show that he or she is the innocent and injured party; otherwise the court should not grant the divorce." This construction of the statute, a construction placed upon it at a very early period in our history as a State, has been adhered to by our courts from that day to this, notwithstanding the change in its phraseology, as we have seen. It has always been held, as said by the court in Hoffman v. Hoffman, supra, l. c. 549, that "the least that can be required, . . . would be to compel parties to come into court with hands so far clean, at least, that the opposite party is not entitled to the same redress from them."

Reviewing the testimony in this case, we have no hesitancy in saying that we agree with the finding of the trial court that the defendant in this case is guilty of the perpetration of sufficient of the acts charged by plaintiff in his petition to have entitled plaintiff to a divorce, provided he was without fault himself. We are not to be understood as finding that plaintiff has sustained all of his charges; we do not think he has sustained the most serious of them. That defendant used violent language toward plaintiff, was quarrelsome on occasions, is fairly well proven; so also there is evidence tending to show that on at least one occasion she charged him with too much familiarity with other women. These facts appear in evidence, although it must be said the evidence as to them is slight.

But there is just as much evidence presented in this record before us of unjustifiable acts by the plaintiff during the married life of the parties as of like acts by defendant. There is no substantial evidence that defendant's acts caused plaintiff to close up his business. On the contrary the evidence tend to prove that defendant had always helped plaintiff in his business and that without any apparent cause to do so, plaintiff closed up his business as a merchant and practically without any notice whatever to his wife of his intention so to do, left her and the two children born of the marriage alone in St. Louis and visited his native land, leaving with his wife, for the support of herself and children during his absence of some two months, the sum of $100. He did not inform his wife, according to her testimony, and it is uncontradicted, of his intention to leave her and the family and make this long visit to a foreign land, until the very morning that he left. When he did leave he did not kiss either his wife or his children good-bye, and at five o'clock of the morning of the day he left, he for the first time told his wife of his intended departure. When he returned from his visit to his native land, it appears, according to his own testimony, that it was three days after his return before he entered the home. He testifies that when he came back from Germany he went home and there was no one about the house; that the shutters were shut, the doors locked and he went back to a friend of his and stayed there for another day; went back home again and it was still closed and it was the third day after his return when, as he says, he went to work and broke in the door and went inside, and his wife was not there. He is without any corroboration as to this. His wife's testimony as to the matter, and in this she is corroborated by other witnesses, is, that during these three days when he was in the city she was occupying the house with her children and that on the third day, that is the day upon which

plaintiff broke into the house as he said, she had been staying for part of the day with her children at her mother's, a short distance away from the home, and when she returned to her home she found her husband sitting on the doorstep. In all material matters connected with the relations between them the wife emphatically denied every one of the accusations contained in the petition or testified to and in a very great many of them she is corroborated in her denial by the testimony of others. According to his own testimony the quarrelling between these parties commenced a year after their marriage. They were married in May, 1895, and the plaintiff testifies that within a year after that and continually from then on the differences commenced between them and that they had been kept up ever since. But they lived together from May, 1895, to May, 1910—were even at the time of the trial living in the same house. Two sons were born to them of the marriage. That they quarrelled is beyond question; that he was sullen and sulky when at home with his wife and family is testified to, not only by his wife but by his own witnesses. Viewing this case throughout and considering all of the testimony in it, we have concluded that plaintifffff is not an innocent party within the meaning of the statute and is not entitled to a decree. Moreover, we see no reason to prevent them renewing their marital relations and uniting in the uprearing of the two sons, both young, born to them of the marriage.

The judgment of the circuit court is reversed and the cause remanded with directions to that court to dismiss it at the cost of the plaintiff. *Nortoni* and *Caulfield, JJ.,* concur, the latter only in the result.