Firman L. O'LEARY, Plaintiff-Respondent,

v.

Norma H. O'LEARY, Defendant-Appellant.

No. 31767.

St. Louis Court of Appeals.
Missouri.

Nov. 17, 1964.

Rehearing Denied Dec. 21, 1964.

George W. Curran, St. Louis, for defend-ant-appellant.

Bahn & Saitz, William S. Bahn, Husch, Eppenberger, Donohue, Elson & Cornfeld, Carroll J. Donohue, and J. Roger Edgar, St. Louis, for plaintiff-respondent.

BRADY, Commissioner.

Those portions of respondent's petition for divorce pertinent to the consideration of appellant's allegations of prejudicial error are that the parties were married in June of 1942 and separated in December of 1962; "* * * that during all that time," he had "* * * faithfully demeaned himself and discharged all of his duties as the husband of defendant and at all times treated her with kindness and affection * * *"; but that defendant had rendered his "* * * condition in life intolerable * * *" by the following indignities: being excessively jealous without justifiable cause; constantly arguing and complaining to him about "* * * small and petty things"; causing him excessive embarrassment at his various places of employment by calling there and questioning plaintiff's whereabouts and movements; by wrongfully and erroneously accusing his fellow employees of improperly associating with him; by disliking his friends and family and refusing to associate with either. The appellant admitted the marriage and separation but denied each of the alleged indignities. The parties will hereafter be referred to by their designation in the trial court.

The defendant contends the trial court erred in granting the plaintiff a divorce because plaintiff's proof is insufficient to support a charge of general indignities. The defendant also contends the plaintiff's own evidence "* * * constitutes proof that plaintiff is not the innocent and injured party * * *." The plaintiff did not ask for custody of the minor child born of this marriage. The defendant did not file any pleading requesting an award for support for herself or for the minor son in the event a divorce be granted. The defendant's allegations of error require a careful review of the evidence.

The petition does not contain any allegation regarding defendant's acts after their separation nor is it susceptible to any reading which would reasonably infer that plaintiff intended to base his charge of general indignities upon any of defendant's activities that occurred after the separation. This case is to be distinguished from Ezell v. Ezell, Mo.App., 348 S.W.2d 592, in that regard. Nevertheless, as shown by the factual statement set out earlier herein, in support of his allegations of general indignities, the plaintiff introduced evidence of defendant's activities which admittedly took place after these parties had separated. This evidence was not only introduced without objection but issue was joined on the matter. For example, with respect to the occasion when plaintiff drove a Margaret Horton home, the defendant gave testimony the purpose of which was to show that she was provoked into going to the Horton residence as a result of plaintiff's misconduct. If believed, defendant's testimony would prevent defendant's activities from constituting an indignity. Holmes v. Holmes, Mo.App., 251 S.W.2d 390. Accordingly, the pleadings must be deemed to have been

amended by the proof to include allegations of general indignities occurring after the parties separated.

The plaintiff's evidence bearing upon the allegation that defendant was excessively jealous without cause was that in 1959 upon returning home from a party given by some friends named Young, the defendant remonstrated with the plaintiff about his conduct at the party and specifically objected to the fact he danced several times with other women. Plaintiff further testified that when he drove a Mrs. Kohler, an acquaintance of his, to a beauty shop, she left a package in his automobile which defendant found and that defendant made numerous calls to this woman to inquire about the circumstances of this trip. Plaintiff also testified that he was embarrassed on an occasion after these parties had separated when he drove a Margaret Horton home and found the defendant waiting for him in front of the Horton residence. On another occasion the telephone operator where plaintiff worked asked him to drive her to work and plaintiff put her name and address on a note which he left in his automobile so as not to forget it. Defendant found the note and made a call to the woman. This occurred after the separation. Other testimony given by the plaintiff to support this allegation was that the defendant had entered his separate abode on a pretext and there found a note from Margaret Horton written on a St. Patrick's Day card.

The defendant's evidence on this issue was that plaintiff had grown cold toward her in 1962 and that during that year the parties did not have sexual relations. She became worried about their marriage. She also testified that on the occasion when she waited in front of the Horton residence, she had received a telephone call and went there as a result of that call. Defendant also relies upon plaintiff's testimony that his automobile had been stolen while it was parked near the Horton residence and that on many occasions during the marriage the plaintiff would not come home at all and would offer no excuse or explanation for his absence.

The plaintiff's evidence in support of the allegation that defendant constantly argued and complained about small and petty things was limited to the occasion previously referred to when the parties returned home from the party in 1959. Plaintiff also testified that when defendant refused to go out with him this caused arguments " * * * on many occasions * * *." No dates were given and in the sentence immediately preceding that testimony the plaintiff had been speaking of such occurrences taking place four or five years before the trial.

The allegation that defendant caused the plaintiff excessive embarrassment by calling at his places of employment was supported by plaintiff's testimony that in 1960, when he had not returned home on time, the defendant called his place of employment.

The transcript is devoid of any proof as to any statements or accusations made during their marriage by the defendant to any of plaintiff's fellow employees concerning their wrongful association with plaintiff. The only proof of this allegation that can be discovered in this transcript is the plaintiff's testimony that on the occasion when plaintiff drove to her home the telephone operator who worked with him defendant called her on three or four occasions and as the plaintiff put it " * * * made an issue of it * * *." The defendant admitted she called this woman once to " * * get the connection of her with my husband * * *." This took place after the separation.

The plaintiff also alleged as a general indignity that the defendant disliked plaintiff's friends and family and refused to associate with either. As to defendant's dislike of plaintiff's family, the plaintiff's evidence was that in June of 1957 he had his brothers and sisters at his home for a barbecue along with some other friends. He testified: " * * * They certainly weren't welcome, not made to feel welcome. So, after the barbecue was over and they left,

all she could talk about was that they were moochers and she didn't want anything to do with them anymore, and this constituted nothing but frustration for me." The plaintiff's sisters also offered testimony on this issue. Mrs. Fitzgerald's testimony was that after the barbecue in 1957, the defendant had called her on the phone and the following conversation had ensued: (Mrs. Fitzgerald) "We had a very nice time." (The defendant) "Well, you thought you had such a good time, you don't have good times when we are together, you just think you do." She also testified that the defendant told her the Fitzgeralds wouldn't be coming back to the defendant's home because Mrs. Fitzgerald had insulted them. She testified that she had not been back in the plaintiff's home since that occasion. Mrs. Durst testified that she had visited in the plaintiff's home four times in the last ten years and that she did not visit more often because she felt that she was not welcome. When asked upon what she based that opinion, she testified: "Oh, just different things that I would call on the phone to make a—we were always getting together for a picnic or something, and I would call and ask Mrs. O'Leary if she would, you know, like to come to the picnic, and she wouldn't ever answer me. So, then—they would not show up. I just thought, well, he doesn't want to see us any more. After I talked to my brother recently, why, he just said he never got the messages. Q You would leave the message and she wouldn't give him the message? A Yes, sir. Q Were you there on this particular party? A Yes, sir. Q In '56 or '57? A Yes, sir. Q Were you told you weren't welcome anymore? A More or less. We just avoided her because you couldn't be friendly with her." Mrs. Durst also testified that in the past they had stopped by the plaintiff's home but the defendant " * * * was as cold as anything, so, we just maybe stayed a couple of minutes, maybe half an hour at the latest." She was asked if she was distant toward the defendant and replied, "No. We had a party two years ago in 1961, and I invited her, but I don't recall going near her all

evening, because it just—I don't know, she is just cold."

The defendant's testimony on this issue was that she thought she was nice to the plaintiff's family. She gave her opinion of them in this manner: " * * * they love a good time, don't always like to pay for it." She stated that her husband was often out of work and held eleven different jobs in the twenty years of their marriage. As a result she couldn't manage to entertain as lavishly as he wished. She managed the home on $25.00 a week and then on $30.00 a week when the plaintiff had to have his white shirts laundered and bought her own clothes and sent her son, who was away in college, $10.00 occasionally. Her further testimony was that it was on the occasions when the family was short of funds that the quarrels about entertainment arose. She gave as an example an occasion when Mrs. Durst and her husband came to the plaintiff's home and the four of them went to a golf club. While there the plaintiff bought a case of beer at a time when, as the defendant stated it, " * * * I didn't know where my next dollar was coming from." Both Mrs. Durst and Mrs. Fitzgerald testified that the defendant served them properly and afforded plenty of food and beverages whenever they were at the plaintiff's home.

With respect to plaintiff's allegation that defendant disliked and refused to associate with their friends, the evidence to support this allegation was that he belonged to several engineering societies and on the occasion of their Christmas dinner dances he would ask the defendant to accompany him and that in the past ten years she had only attended one of these affairs. The specific evidence relied upon by the plaintiff to support this allegation was his testimony regarding the defendant's conduct arising out of an altercation she had with a neighbor family regarding a ditch she had dug on the property owned by the plaintiff and defendant. The plaintiff's testimony was that in June of 1960 this neighbor stopped him on the driveway to talk to him about the

ditch defendant had dug and that the defendant "* * * came out of the house and threw herself around me, screaming there was going to be a fist fight * * *" and grabbed him around his shoulders and wrapped her legs around his legs "* * * to restrain me. * * *" The plaintiff's testimony was that this was unnecessary as he had no intentions of being involved in a fist fight with a neighbor. He stated he was very humiliated by defendant's action which was witnessed by other neighbors also and that he dragged her back into the house and "* * * severely chastised her verbally about this type of action." He testified that the continuation of this argument over the ditch for the past five years so embarrassed him he wanted to sell the house and get out of the neighborhood. He also testified that as a result of this occurrence his work suffered stating: "* * * I couldn't come home from work with the thought in mind whether I was going to have to fight the neighbors or leave in the morning figuring I may have to fight these neighbors." There was no evidence regarding the social association of the neighbors with the parties to this action nor as to the degree of their acquaintance with the plaintiff and the defendant.

The defendant's evidence as to this occurrence was that it took place when she attempted to prevent the surface water flowing off of other property from flooding the basement of their house. She testified that she tried to reason with these neighbors but was unable to do so and that she gets along with every other neighbor on the block.

With respect to the issue of whether or not the plaintiff is an innocent and injured party, the evidence is that the plaintiff expressed satisfaction with the defendant as a parent, as a housekeeper, as a budget manager, and as a sexual companion. He did complain about the defendant's mode of dress, stating that the defendant has been "too modest" and that she did not dress in a manner he thought suitable for the social functions which he wished her to attend.

Defendant's evidence was that she had to alter clothes her sister gave her and did not have an elaborate wardrobe, although she admitted she had never asked the plaintiff to buy her more clothes. The plaintiff admitted that he had no love for the defendant and had had none for a period of at least ten years prior to their separation. He stated that at that time he objected to buying their home because "* * * I didn't want the responsibility of having—being tied down to the house, knowing full well that in due time that we were certainly going to go our own ways, because our love was not together." He admitted that on frequent occasions during the marriage he would absent himself from home without excuse or explanation other than "* * * I could see no reason to come home to something or to a place just to hang my hat." The defendant testified that she still loved her husband; that she had written him and talked to him and attempted to effect a reconciliation but was unsuccessful. Upon the date of separation the parties had a savings account of $800.00 which the plaintiff had testified the defendant had appropriated. The defendant admitted that she took the money and stated that she had used $447.00 to pay off a debt that her husband had incurred. It appeared elsewhere that a part of this $800.00 represented the proceeds from an insurance policy paid defendant upon the death of her mother.

After the parties had concluded their respective cases, the trial court recalled the plaintiff to the stand and asked him this question: "Mr. O'Leary, if this petition is denied that you filed here for a divorce, would you ever, under any circumstances, live with this lady, Mrs. Norma O'Leary, your wife, again?" The plaintiff answered that regardless of the outcome of his case, he was not going back to live with the defendant.

Our review of a divorce action is in effect a trial de novo upon the record, and we are to reach our own conclusions. The decision of the trial court is not to be reversed unless we find that decision

manifestly entered for the wrong party or one clearly against the weight of the evidence. Holmes v. Holmes, supra; Holm v. Holm, Mo.App., 251 S.W. 130. In Barth v. Barth, 168 Mo.App. 423, l. c. 427, 151 S. W. 769, 770, it was said that "* * * When it becomes apparent that the true aims of the union of a man and woman can no longer be achieved by continuing the marital tie, it can hardly be that the interests of society demand that the union be preserved by mere force of law * * *." Doubtless it was this philosophy that prompted the trial court's inquiry as to whether, regardless of the outcome of this action, the plaintiff would ever again live with the defendant as man and wife. However, the court in Barth v. Barth, supra, went on to state that the duty of the court is to see to it that a marriage is not dissolved "* * * on slight testimony, nor for either light or trivial causes. * * *" In Bassett v. Bassett, Mo.App., 253 S.W. 112, rev. 280 S.W. 430, the court held that regardless of the consideration mentioned in Barth v. Barth, supra, the court's duty was "* * * to decide whether just, legal, reasonable, and proven grounds exist for the sundering and abrogation of the marriage contract, and, unless such grounds are found to exist, it is our clear duty to deny the abrogation of a contract which the parties themselves have made and entered into."

As is apparent from a reading of the facts as set out in this opinion, there is no real conflict as to the evidence in this case. This is not a case where the testimony of one party is contradicted by the other. In fact the defendant admitted most of the plaintiff's testimony to be true but offered explanations or amplifications of that testimony. The issue does not depend upon the credibility of the witnesses. Simply stated the question to be resolved is whether the commission of the acts alleged and proved by the plaintiff constitutes such general indignities as to support a decree of divorce. It follows that the instant case is not one where the rule of deference plays an important part as that rule has application where the case turns upon the credibility of witnesses or the character of the parties as that character might be ascertained by the trial judge from the appearance and demeanor of the parties. Moore v. Moore, Mo.App., 337 S.W.2d 781.

Each case in which a divorce is sought on the grounds of general indignities must necessarily rest upon its own factual situation. Richardson v. Richardson, Mo.App., 270 S.W.2d 68; Moore v. Moore, supra. This court has said that "* * * the acts relied on must amount to a species of mental or physical cruelty, and must evidence a course of conduct by one spouse towards the other whereby the other's condition is rendered intolerable through acts of such character and frequency as to be subversive of the family relation. * * *" Mayor v. Mayor, Mo.App., 351 S.W.2d 810, l. c. 813. A more lengthy definition of general indignities is stated in Moore v. Moore, supra. There it was said that indignities sufficient to constitute grounds for divorce must be such as cannot be relieved by any exertions of the injured party; that a single act or word or occasional acts or words will not suffice; and that the course of conduct must be such as to connote settled hate and a plain manifestation of alienation and estrangement.

■ In an action for divorce based upon indignities the party alleging the indignities has the burden to establish both the marital misconduct of the other party and that he or she is the innocent and injured party. Haushalter v. Haushalter, Mo.App., 197 S.W.2d 703. The party alleging the indignities must bear this burden by a preponderance of the credible evidence. Greenbury v. Greenbury, Mo.App., 223 S. W.2d 153; Waters v. Waters, Mo.App., 357 S.W.2d 233.

■ We are of the opinion that this transcript does not disclose a course of conduct upon the defendant's part such as to connote settled hate toward the plaintiff

and a plain manifestation of alienation and estrangement from him. Moore v. Moore, supra. The evidence as to most of the allegations does not disclose a course of conduct at all but only single or very occasional acts on the part of defendant. So it is as to the evidence offered in support of the allegation that the defendant constantly argued with plaintiff about small and petty things. This evidence was limited to one occasion which took place in 1959. There was some other evidence as to defendant's refusal to go out with the plaintiff as being the cause for arguments, but this evidence is of little probative value. There was no occasion specified in the evidence as to when this occurred and as a matter of fact in the same answer in which this evidence was given the plaintiff was talking about an occurrence that took place four or five years ago. Acts that far apart cannot reasonably be said to indicate a course of action. With respect to the defendant's alleged acts of embarrassing the plaintiff by calling his places of employment, the plaintiff's evidence is again limited to only one occasion in 1960 when the plaintiff himself admitted that he did not come home at the time he indicated he would be home and his wife called to inquire about him.

The plaintiff's evidence with reference to the defendant wrongfully and erroneously accusing his fellow employees of improperly associating with him is also insufficient to support the plaintiff's burden. So far as this transcript discloses, the defendant did not have any discussion with Margaret Horton on the occasion when the plaintiff drove her home and found the defendant waiting for them. Neither is there any evidence to show defendant accused her on on any other occasion. The only evidence in this record to support this allegation is plaintiff's testimony that the defendant called the telephone operator he drove home and, as the plaintiff put it, " * * * made an issue of it * * *." The record does not state what was said. Giving the plaintiff

every possible benefit of all reasonable inferences the most this evidence shows is that the defendant did not want the plaintiff to drive the telephone operator home. This evidence is clearly insufficient to prove the defendant made any accusations to the telephone operator concerning her wrongful association with the plaintiff. The evidence as to the occurrence with Mrs. Kohler does not bear upon this allegation as Mrs. Kohler was admittedly not a fellow employee with the plaintiff.

To support his allegation that the defendant disliked his friends and refused to associate with them the plaintiff relies upon his testimony with regard to the altercation with the neighbors and the fact that the defendant refused to attend all the social affairs the plaintiff desired her to attend. So far as the altercation with the neighbors is concerned, that evidence is insufficient for the reason that so far as this record discloses it occurred only once. The plaintiff's evidence was that he became upset by the fear that it might occur again and he would have to fight with these neighbors, but his own evidence shows only one such occurrence. Moreover, there is no showing that the plaintiff and the neighbors were friends or were acquainted socially at all. The only evidence is that they were "neighbors." We do not believe the evidence as to defendant's refusal to attend the social affairs the plaintiff desired her to attend is such that it would reasonably tend to subversion of the family relation. Greenbury v. Greenbury, supra. The plaintiff's own evidence as to the Christmas party at the Young's home and the occasions when they entertained his family are proof that the defendant did indulge in some social activities with the plaintiff although they may be more limited than the plaintiff might have desired. The defendant's uncontradicted testimony as to their limited financial condition and her resultant inability to dress according to her husband's wishes is a more reasonable explanation than to infer that defendant's refusal to attend all of these social affairs was a result of a settled

course of action on her part arising from her desire to subvert the family relation.

The plaintiff's evidence as to the defendant's alleged dislike of plaintiff's family is not sufficient to bear the burden incumbent upon him. There was no course of conduct illustrated by the occasional activities. In addition, it is obvious from the evidence that the plaintiff's sisters were not overly friendly toward the defendant and on at least one occasion when they were together did not go near her all evening. Both of the witnesses who testified on this issue indicated that when they did visit the defendant's home she was generous with food and drink. Moreover, we think the defendant's evidence as to the financial situation of the parties and particularly with respect to the number of occasions the plaintiff had been out of work and the amount of money which she was given on which to run the home indicates that there was not a large amount available with which the defendant could have entertained as the plaintiff wished.

The same is true as to the plaintiff's evidence that defendant was excessively jealous. As to this allegation plaintiff's evidence concerned itself with an occasion in 1959 when defendant remonstrated with plaintiff concerning the fact that he danced with other women at a Christmas party they attended; the incident with Mrs. Kohler; the occasion when defendant was in front of the Horton residence when the plaintiff drove that woman home; the occasion when he drove the telephone operator to work; and the occasion of their separation when defendant entered plaintiff's abode on a pretext and took a St. Patrick's Day card sent to him by Margaret Horton. The party in 1959 is too far removed from the other occur-

rences to amount to anything more than a single act unconnected to any settled course of action on defendant's part. Certainly, it alone would not supply sufficient grounds for the decree. With respect to the rest of these occurrences except the entry into plaintiff's place of abode, it is sufficient to state that the defendant cannot be deemed guilty of intolerable indignities when those indignities are provoked by her husband's misconduct. Holmes v. Holmes, supra. The defendant's entry into her husband's abode upon a pretext after the separation is a more serious charge yet it too stands alone, unconnected with other similar occurrences. In and of itself and considered in the context of her husband's coldness toward her and his activities with other women, we do not believe this act alone to be of such a character as to amount to a species of mental cruelty (Mayor v. Mayor, supra) or to meet the tests for indignities sufficient to justify a decree of divorce as those tests are set forth in Moore v. Moore, supra, and similar cases therein cited.

The judgment should be reversed and the cause remanded with instructions that the trial court enter its order denying the plaintiff a divorce. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of this court. The judgment is reversed and the cause remanded with instructions that the trial court enter its order denying the plaintiff a divorce.

WOLFE, Acting P. J., ANDERSON, J., and L. F. COTTEY, Special Judge, concur.

RUDDY, J., not participating.