Frederick K. SCHWARZ, Plaintiff-Appellant,

v.

Emily W. SCHWARZ, Defendant-Respondent.

No. 32784.

St. Louis Court of Appeals.

Missouri.

March 19, 1968.

Motion for Rehearing or to Modify Opinion Denied April 19, 1968.

McElwee & McElwee, Rexford H. Ca-
ruthers, St. Louis, for plaintiff-appellant.

G. A. Buder, Jr., Richard O. Roberts,
St. Louis, for defendant-respondent.

BRADY, Commissioner.

The trial court entered judgment against plaintiff on his petition for divorce and against defendant on her cross-bill for separate maintenance. Plaintiff appeals from the judgment denying him a divorce.

A statement of the pleadings and action taken by the trial court will help delineate the issues. The petition alleged defendant offered such indignities to plaintiff as to render his condition intolerable. See § 452.010, RSMo1959, V.A.M.S. Four indignities were set out as grounds. In view of our decision those pertinent are the allegations defendant became cold and indifferent toward plaintiff and on numerous occasions neglected, failed and refused to perform her marital duties and to treat plaintiff with kindness, consideration, love or affection; on numerous occasions defendant became violent and " * * * quarreled at, insulted, beat and battered the plaintiff and threatened to have him thrown out of the house"; and defendant interfered with plaintiff's disciplining the children born of this marriage. Plaintiff prayed for divorce and " * * * that the Court make such orders, judgments and decrees concerning the care, custody, control and maintenance of the minor children born of the marriage as in the nature of the case and the circumstances of the parties would be meet and just."

Defendant's answer admitted the marriage, the birth of the children, and denied every other allegation in the petition. Her cross-bill was also based on the ground of indignities. The allegations of her cross-bill were: (1) plaintiff without sufficient cause left home and abandoned her and has refused to return home; (2) plaintiff has displayed a violent and ungovernable temper toward her particularly with respect to her efforts to conduct Christian training for her children; (3) plaintiff unreasonably objects to defendant's encouragement of a Christian atmosphere in the home; (4) plaintiff's actions and conduct clearly indicate a lack of love for the defendant and a desire not to live with defendant as his wife; (5) plaintiff has refused to show proper respect toward defendant and has belittled and embarrassed her before their children and friends; (6) plaintiff has threatened her with bodily harm and has struck her and knocked her to the floor before the children; and

(7) plaintiff on occasions has cursed her and used vile and profane language before the children.

The trial court found " * * * the indignities complained of were too scattered and remote and did not show a course of conduct or continued treatment as renders Plaintiff's condition intolerable, and tends to the subversion of the family relationship, * * * " and on that ground denied plaintiff's petition for divorce. Plaintiff contends the trial court's finding necessarily implies it found there were indignities suffered by the plaintiff and the only issue is whether the trial court's conclusion the indignities suffered by the plaintiff were not of a sufficiently continuous nature to warrant the granting of a divorce is to be upheld. In our view this question is more academic than practical for the reason we try cases of this nature de novo entering such judgment as the trial court should have entered giving due regard to the opportunity of the trial court to judge the credibility of the witnesses where there is conflicting testimony while remaining cognizant of our duty to reach our own conclusions from a review of the evidence. Civil Rule 73.01(d), V.A.M.R. Heibel v. Heibel, Mo.App., 366 S.W.2d 37.

It is unnecessary to burden this opinion with a detailed recitation of the evidence offered by plaintiff and defendant as to each of the occurrences which plaintiff contends constitute proof of one or more of the indignities alleged in his petition. The testimony offered in this case was lengthy and extremely rambling. The parties lived in St. Louis at the beginning of their marriage, moved to Gulfport, Mississippi upon plaintiff's transfer there by his Company, then to Pennsylvania also upon transfer, and then back to St. Louis County where they lived first on Conway Road and then in a house they built on Babler Road. The parties were married in April of 1954 and the evidence dealt with instances occurring from that date until June of 1965 when the final separation occurred. The probative force of the evidence as to many of the incidents which we deem it unnecessary to relate rests solely upon the issue of credibility of the witnesses; the testimony thereto offered by the parties being sharply conflicting. We need not relate these for the reason, as will later appear herein, there is evidence about which there is no dispute sufficient to substantiate plaintiff's allegation of indignities. Much of the other testimony we have deleted from this opinion concerns incidents which are uncontradicted or admitted by the defendant. Examples of this type of evidence are to be found in plaintiff's evidence that while the parties were living in Mississippi defendant required plaintiff to telephone to stop plaintiff's parents from coming for their first visit in some six months, and on another occasion to write to his parents withdrawing an invitation to visit. Another is the "onion and diaper pin" incident. This occurrence took place when plaintiff telephoned home from the office and informed defendant he was to have dinner with a customer and his Company's plant manager. While out for dinner he had three or four green onions. When he came home his wife didn't speak to him. He didn't know why. Plaintiff retired but defendant came to the bedroom, turned on all the lights, and told him that because he smelled of onions he was going to have to sleep somewhere else. Plaintiff refused and defendant pulled the covers off him, and when he still did not move she went to the bathroom, got some water and threw it on him. When plaintiff still refused to move defendant took a diaper pin and stuck him with it. The second time she stuck him with the diaper pin he slapped her whereupon she became extremely angry and threatened to call the police and her mother. He finally moved and slept in the den. We have deleted the evidence as to other such instances for the reason they fail to show a continuous course of conduct by one spouse constituting a species of mental cruelty connoting settled hatred and involving a plain

manifestation of alienation and estrangement rendering the condition of the other spouse intolerable through acts of such character and frequency as to be subversive of the family relationship. That is the definition of indignities warranting a divorce. Mo.Dig., Divorce, ⊜29. O'Leary v. O'Leary, Mo.App., 385 S.W.2d 346, l. c. 351[2] and cases there cited; Reeves v. Reeves, Mo.App., 399 S.W.2d 641[2]. We will confine our recitation of the evidence to those instances occurring between September of 1963 when the parties moved into the house on Babler Road in St. Louis County and June of 1965 when the final separation occurred which in our opinion require reversal of the trial court's judgment.

These parties moved into the house on Babler Road in September of 1963. They had been having trouble all through their marriage with regard to the frequency of their sexual relations. Plaintiff testified defendant would just refuse to cooperate with the result that on at least one occasion he was unable to accomplish the sexual act whereupon defendant laughed at him and asked what was the matter with him. He left home that night. At the office the next day he learned there was a Company function that night involving the new vice-president and general manager of his Company who had brought his wife with him on a visit and invited plaintiff and a number of his employees and their wives to a cocktail party. He called defendant and asked if she would go and she said she would and asked if he was coming home whereupon plaintiff said they would discuss that matter. The parties did attend this function. Later that evening plaintiff testified he told defendant: "* * * I couldn't see any reason for me to stay. She pleaded and begged and I told her I expected her to be a wife and to get the living room furnished and to do all these things and I wasn't going to stand any more of this mistreatment in bed and she agreed and we went to bed together and had an enjoyable evening. Three days later

she began refusing me again and as I said, her refusals any more were quite degrading." As an example he testified that, following this incident, he approached her with regard to intercourse while they were in bed. She stated she was in her menstrual period and was wearing a sanitary napkin. She told plaintiff: "The next time I will take it off and throw it in your face * *."

Plaintiff also complained defendant was disciplining one of their children in a manner of which he disapproved and that she refused to desist or to discuss the matter with him. His evidence was that defendant would fill a wash basin full of water and push the boy's face in it. He strongly objected to this practice, and on one occasion he found that she had been disciplining him in such a fashion to the extent the boy was crying. When he attempted to talk to defendant about the matter he testified her only comment was: "To chastise is to love". She refused to otherwise discuss the incident.

In January of 1964 plaintiff's testimony was he came home from work and found defendant on the sofa in the den reading a book. After dinner she continued to read. When it became time for the children to go to bed defendant told them to do so. The middle boy didn't obey as promptly as defendant thought he should and an argument ensued whereupon defendant asked plaintiff why he couldn't make the child behave and show the proper respect for his mother. Plaintiff replied that he couldn't be too hard on the boy as he felt defendant's activities had caused the lack of respect. When he made this statement defendant came over to plaintiff and began striking him with the heel of her loafer. He got a "good knock on the arm" and "one on the head". He told her to stop it and when she did not he slapped her face with his open palm whereupon she began swinging both shoes at him. He again requested that she desist and upon her failure to do so slapped her again. His testimony was defendant lay down on the carpet, rolled back and forth, kicked her feet and

screamed. When defendant arose she telephoned her sister and brother-in-law and asked them to come over and throw plaintiff out of the house. They did come over and plaintiff's testimony was they went on home upon his explanation of what had happened. The following night the parties were to attend a dinner at the home of the vice-president of plaintiff's Company. Plaintiff's immediate superior was to be present. Plaintiff testified defendant stated she was going to call this vice-president's wife and tell her she couldn't attend because her face was all marked up. In any event defendant refused to attend the party but instead went to a political rally.

Defendant's evidence as to these occasions did not contradict or rebut the essentials stated by plaintiff. With respect to the occasion in January of 1964, her testimony was she attempted to strike him with her shoe because he was using profanity in front of the children but was unable to hit him because "he was able to fend me off"; that he struck her a number of times on her head with his fist or hand with the result that it was cut and bled. However, later in her testimony she admitted she had been able to hit plaintiff on the arm with her shoe. It further appeared the words plaintiff used were "hell" and "damn".

With regard to the disciplining of the child her testimony was that spanking this child did not bring any results " * * * so I resorted to the method of putting his head under running water. He was not allowed to consume water but he was just given this as a method of correction which I didn't like to resort to which proved very satisfactory because it only had to be done for a short period. Q You did not submerge him in a bowl or basin of water? A No."

■■■ It is too well settled to require citation that each case wherein a divorce is sought on the ground of indignities must be determined from its own facts and circumstances as it is impossible to formulate any all-encompassing rule. As indicated previously herein we are of the opinion that the evidence recited above about which there is no essential dispute or contradiction and which took place between September of 1963 and June of 1965 is sufficient evidence of acts constituting such indignities as to render the condition of plaintiff as defendant's spouse intolerable and thus require this court to reverse the judgment entered by the trial court. While the exact dates of the occurrences are unspecified in the transcript a fair reading thereof makes clear plaintiff's objections with regard to the manner in which defendant was disciplining one of the children by administering what is referred to as "the water treatment" were consistently ignored by defendant. Child discipline is certainly not the exclusive function or responsibility of either parent but a matter for joint concern and agreement. The continued and conscious disregard of plaintiff's wishes in this matter—wishes that were reasonable to say the least—was such as to effectively undermine his authority in the home. There are other matters of equal significance and timeliness. The altercation of January, 1964 is one. Plaintiff's evidence as to this incident stands uncontradicted in its important aspects. The defendant's sister did contradict him as to whether plaintiff's blow to defendant drew blood but that is unimportant in view of the fact this blow, whatever its force, was struck after an attack made upon plaintiff by defendant whose own testimony indicates plaintiff attempted to fend her off until he finally had to protect himself. Defendant did testify plaintiff used profanity, the words uttered being "hell" and "damn". We do not say utterances of this nature were not offensive to defendant who apparently was of a serious religious nature. Nevertheless, their use cannot be said to have called for retaliation of the violent nature employed by defendant. In addition, there is the undisputed testimony that on an occasion occurring between July of 1964 and June or May of 1965 defendant refused to cooperate with plaintiff when he attempted intercourse with her to the extent he was unable to do so and then taunted him for his failure. In this same vein of testimony

regarding the sex relations of these parties, plaintiff's evidence with regard the sanitary napkin stands uncontradicted. This occurred a short time after the "taunting" incident. All of these events took place between September of 1963 and July of 1965. Considered together they constitute uncontradicted evidence of acts of such character and frequency showing a continuous course of conduct constituting a species of mental cruelty connoting settled hatred and involving a plain manifestation of alienation and estrangement rending plaintiff's condition so intolerable as to be subversive of the family relationship. Mo.Dig., Divorce, supra; Reeves v. Reeves, supra.

■ Defendant argues that even if that be so, still we cannot grant plaintiff a divorce for the reason he has failed to prove himself the innocent and injured party. We cannot agree. There is no doubt but that plaintiff had the burden of proving himself to be the innocent and injured party. § 452.020, RSMo1959, V.A.M.S.; Ezell v. Ezell, Mo.App., 348 S.W.2d 592[11] and cases there cited. In Ezell the historical background of such a requirement was set forth. In Gregg v. Gregg, Mo.App., 416 S.W.2d 672, 1. c. 675, this court said: " * * * the requirement of 'innocence' means only that the applicant must show that he himself has not committed any offense which is cause for divorce; that the burden of showing such innocence is an affirmative one resting upon the party seeking divorce; and that where both parties have grounds for divorce, neither party is entitled to the relief. R——— v. M———, Mo.App., 383 S.W.2d 894. The degree of innocence a party must have to be entitled to a divorce does not mean that his or her conduct toward the spouse on all occasions must be letter perfect and above all reproach. The generally accepted rule is that the conduct of one party will not prevent him from being adjudged an innocent party unless it be such as to entitle the other party, prima facie, to a divorce." Applying the standards therein set forth to plaintiff's actions he is not prevented from being

granted a divorce on the ground that he was not the innocent party. In so deciding we refer to defendant's cross-bill. The first allegation thereof was plaintiff left without sufficient cause and abandoned her. There is no evidence of this. As stated earlier herein the evidence as we view it was that he had sufficient cause in view of her course of conduct since they moved into the Babler Road house. While the evidence on the matter of finances is meager indeed, there is no contention of abandonment. There was no evidence of defendant's second allegation to the effect plaintiff displayed a violent and ungovernable temper toward her particularly with respect to her efforts to conduct Christian training for their children in the home. To the contrary, defendant's own evidence was that plaintiff agreed with the idea of conducting Christian training for the children at home. The only quarrel was as to the extent to which this training was to go. In any event, even his objection as to the extent of this training cannot be characterized as a display of violent and ungovernable temper. What has been said with respect to that allegation of defendant's cross-bill equally applies to the third allegation thereof to the effect plaintiff unreasonably objected to defendant's encouragement of a Christian atmosphere in the home. The evidence does not support the fourth allegation of defendant's cross-bill that plaintiff has clearly indicated a lack of love for defendant. The record is replete with instances of his attempts to work out their difficulties. He went to see her parents; he urged marriage counseling and consulting a psychiatrist; and only after all else had failed and he left home did he indicate any such lack. There is absolutely no evidence to substantiate the fifth allegation of defendant's cross-bill to the effect plaintiff refused to show proper respect toward her and the children and embarrassed her before their children and friends. This record is devoid of evidence of any such belittlement or embarrassment. There was no evidence plaintiff threatened bodily harm to defendant as defendant alleged in the sixth allegation of her cross-

bill. There was evidence he struck her and knocked her to the floor before the children but that occurred after defendant had attacked him and after he had attempted to get her to desist from the attack. One spouse may not complain of acts into which she has goaded the other. Reeves v. Reeves, supra. In the seventh allegation of her cross-bill defendant alleged plaintiff had on occasions cursed her and used vile and profane language before the children. There is no evidence to support the allegation plaintiff cursed defendant. The only use of "vile and profane language before the children" testified to was the occasion when plaintiff used the words "hell" and "damn". This record does not support the allegations in defendant's cross-bill. Neither does it show that plaintiff has been guilty of conduct constituting a ground or grounds for divorce. In this connection none of the evidence which we deleted is such as would entitle the defendant to a divorce and thus prevent the plaintiff from bearing his burden of proof to show he was the innocent and injured party.

The decision plaintiff should be awarded a decree of divorce does not finally dispose of this case. There was no prayer for nor issue raised at trial nor upon appeal with regard to alimony and that issue is finally determined. However, it is obvious the issue of custody and support of the three minor children born of this marriage remains undetermined. In this connection it should be noted that while plaintiff did not pray for the custody of the children he did pray the court make such orders, judgments and decrees concerning the care, custody, control and maintenance of the children as might seem meet and just. Such a prayer is sufficient to keep alive the issue of custody and support for the children born of this marriage.

We are unable to determine either of those issues based upon the evidence in the transcript now before us. There is evidence that at the date of trial in January of 1966 plaintiff was receiving net take-home pay of approximately $980.00 per month. He testified that he was maintaining the house payments, paying the utilities and defendant's other expenses, all in unspecified amounts, and in addition was giving her the sum of $35.00 per week for food and spending money. Her evidence was that this sum was totally insufficient to support the children and that she had to contribute much more than that in order to support them. There was no testimony as to what their needs were nor how much it would take to meet those needs. The only other evidence bearing upon this issue is to the effect the parties owned a home the cost of which, exclusive of a lot of undetermined price, was $36,000.00 and that this home was mortgaged for an unstated amount requiring payments of an unspecified sum. In view of this state of the record there should be a hearing held to determine the issue of custody of these children and the amount, if any, plaintiff should be required to pay for their support.

The judgment is reversed and the cause remanded to the trial court with directions it hold in abeyance its decree granting plaintiff a divorce until it shall have determined from the evidence adduced at a hearing held for such purpose the issue of custody of the children and the amount, if any, plaintiff shall be required to pay for the support of the minor children born of this marriage. Upon determination of such issues the trial court shall enter its decree granting plaintiff a divorce and embody therein the determination it has reached upon the issues of custody and support of the minor children.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of this court. The judgment is reversed and the cause remanded to the trial court with directions it hold in abeyance its decree granting plaintiff a divorce until it shall have determined from the evidence adduced at a hearing held for such purpose the issue

of custody of the children and the amount, if any, plaintiff shall be required to pay for the support of the minor children born of this marriage. Upon determination of such issues the trial court shall enter its decree granting plaintiff a divorce and embody therein the determination it has reached upon the issues of custody and support of the minor children.

RUDDY, Acting P. J., WOLFE, J., and GEORGE W. CLOYD, Special Judge, concur.