CARRIE B. CREASEY, Appellant, v. MASON M. CREASY, Respondent.

St. Louis Court of Appeals, November 12, 1912.

1. MAINTENANCE: Defenses: Offer to Effect Reconciliation. In view of Sec. 8295, R. S. 1909, providing for support and separate maintenance for a wife, that the allowance shall be for such time as the nature of the case shall require, and that the court shall from time to time make further orders as shall be just, a sincere offer of a husband, who had abandoned his wife and failed to support her, to take her back and maintain her with conjugal kindness and affection, even after a decree for separate maintenance, will defeat her right to separate maintenance.

2. ———: ———: ———: **Form of Judgment.** A judgment for separate maintenance in favor of a wife, whose husband has abandoned and failed to support her, should be so framed as to allow maintenance only until such time as the husband shall take her back and treat her with conjugal kindness and affection.

3. ———: **Taking Case Under Advisement: Trial Practice.** In an action by a wife for separate maintenance, it is not error for the trial court to take the case under advisement and postpone its decision to a later date in order to give the parties an opportunity to become reconciled.

4. **APPELLATE PRACTICE: Review: Action for Maintenance: Taking Case Under Advisement: Necessity of Exception.** In a suit by a wife for separate maintenance, the action of the trial court in taking the case under advisement and postponing its decision to a later date to give the parties an opportunity to become reconciled, cannot be reviewed, on appeal, in the absence of an exception to such action.

5. **TRIAL PRACTICE: Reopening Case: Discretion of Court.** It is a matter of discretion with the trial court to admit or exclude testimony after a case has once been ·closed, and such discretion will not be interfered with on appeal, except in case of its manifest abuse.

,6. **MAINTENANCE: Trial Practice: Reopening Case.** In an action by a wife for separate maintenance, the trial court has the discretionary power of reopening the case and hearing additional evidence on the husband's attempts to effect a reconciliation, after the case had been taken under advisement.

7. ———: **Defenses: Offer to Effect Reconciliation: Sufficiency of Evidence.** In an action by a wife for separate maintenance, evidence *held* to support a finding that defendant offered in good faith to take plaintiff back and maintain her with conjugal kindness and affection, and hence it is *held* that a judgment for defendant was proper.

8. ———: **Res Adjudicata: Conclusiveness of Judgment.** A judgment for defendant, in an action by a wife for separate maintenance, on the ground that he had offered in good faith to take her back and maintain her with conjugal kindness and affection, would not be a bar to a future action for maintenance by the wife, if, upon a resumption of the marital relations, he should mistreat her, or, upon an attempt to return to him in accordance with his offer, he should repulse her.

·Appeal from Audrain Circuit Court.—*Hon. James D. Barnett,* Judge.

AFFIRMED.

*D. A. Murphy* and *Clarence A. Barnes,* for appellant.

(1) The only issues of fact that can be raised or tried are whether the husband without good cause has abandoned his wife and neglected or refused to support her. Sharpe v. Sharpe, 134 Mo. App. 278; Youngs v. Youngs, 78 Mo. App. 225; McGrady v. McGrady, 48 Mo. App. 668. The time at which the above facts should appear is of the date of the institution of the suit. Polster v. Polster, 145 Mo. App. 606; State v. Weise, 156 Mo. App. 135. (2) Plaintiff, as the injured and innocent party, had the right to determine whether or not she would avail herself of the cause for divorce, which the defendant had hurled at her, and secure a divorce, or whether she would live separate and apart from her husband, maintained and supported by him; and whatever offers were made after that and especially when made under the strong intimation of the court and after the court had found against the plaintiff, and after the case had been in the bosom of the court for four months and continued for sixty days longer to afford the defendant an opportunity to become reconciled, or rather to afford the defendant an opportunity of making a prima facie case of his own good faith, was never contemplated by the statute, was not within the pleadings, and more particularly is this true in the light of the fact that the record is absolutely silent of any promise of better treatment from the husband to the wife. Spengler v. Spengler, 38 Mo. App. 266. (3) Under all the evidence and the record in this case the trial court's finding that the defendant endeavored in good faith to become reconciled to his wife and thereby defeat the plaintiff's cause of action to what was otherwise a most meritorious case, constituted another of the grievous errors which is properly presented on appeal, and while the appellate courts will in a measure defer to the finding of the

trial court on questions of fact, yet such finding is not conclusive, and the appellate court will review the entire record and reject incompetent evidence admitted on the part of the defendant, and where the offers sufficiently show admit the offers of competent evidence on the part of the plaintiff, and to make its own findings and return a judgment accordingly. Goodrich v. Harrison, 130 Mo. 263; Davis v. Klein, 96 Mo. 401; Barrett v. Davis, 104 Mo. 547; Sheridan v. Nation, 159 Mo. 401.

*L. P. Crigler* and *Barclay, Fauntleroy & Cullen* for respondent.

(1) The action instituted by the plaintiff cannot be maintained because her refusal to return and live with her husband constitutes consent on her part to the respondent living separate and apart from her. Youngs v. Youngs, 78 Mo. App. 225; Droege v. Droege, 52 Mo. App. 84. (2) When a wife remains away from the husband without his consent, and upon his request made in good faith refuses to return to him and discharge the duties of wife, she is not entitled to a judgment for maintenance. Schuman v. Schuman, 93 Mo. App. 104; Louis v. Louis, 134 Mo. App. 566; Thomas v. Thomas, 152 Ill. 577; Hair v. Hair, 10 Rich. Eq. 163; McMullin v. McMullin, 123 Cal. 653; Schroeder v. Schroeder, 26 Ill. App. 524; Kenley v. Kenley, 3 Miss. (2 How.) 751; Briggs v. Briggs, 24 S. C. 377; Crow v. Crow, 23 Ala. 583; Jerolaman v. Jerolaman, 54 Atl. (N. J. Eq.) 166; Hanberry v. Hanberry, 29 Ala. 719; Fellows v. Fellows, 31 Mo. 342; Hooper v. Hooper, 24 N. J. Eq. 93; Whelan v. Whelan, 183 Pa. 293; McGowan v. McGowan, 50 S. W. 399; Gilbert v. Gilbert, 5 Misc. Rep. 555, 26 N. Y. Supp. 30; Chipchase v. Chipchase, 48 N. J. Eq. 549; Provost v. Provost, 63 Atl. (N. J. Eq.) 619.

STATEMENT.—Suit for maintenance brought by the wife against the husband under the provisions of section 8295, Revised Statutes, 1909. The defendant husband had judgment and the plaintiff has appealed.

The petition alleged that defendant, without good cause, abandoned his wife and refused and neglected to provide for her, other than to permit her to occupy one of his tenement houses. The answer admits the marriage and contains a general denial; also a plea, in substance, that defendant had offered to receive his wife again into his home and to afford her suitable maintenance, and was willing and able to do so, and that such offer, willingness and ability continued up to the time of filing the answer. The reply alleged that the offer was not made in good faith and that defendant was not willing, etc.

The trial began on June 14, 1910, and the hearing occupied that and the next day. The parties then announced that they rested, whereupon the court gave some declarations of law as offered by the plaintiff, modified some and gave them as modified, and refused others. It then laid the case over "to give the parties an opportunity to become reconciled." On November 9, 1910, the matter was called again for hearing, both the parties and their attorneys being present, and the court offered to give each party an opportunity to offer further evidence as to anything which might have happened in the interim. The defendant then offered testimony as to what had occurred in the way of endeavors on his part to effect a reconciliation with his wife. The plaintiff offered no testimony and refused to offer any, contenting herself with a mere formal statement by counsel in open court that her husband's endeavors were not in earnest; that some six weeks before she had asked the court to allow the costs and stated as a ground for the motion that she willingly forgave the defendant and promised to live with him as his wife; that the motion still remained undisposed

of and no effort had been made to call it up; that "we do now consent to return and live with him." Counsel for plaintiff stated that he "offered no testimony at all, on the theory that all this testimony has been improper." Thereupon the court rendered its decision and caused judgment to be entered, wherein it finds on the entire evidence that though defendant originally abandoned plaintiff without cause and continued in fault until he endeavored in good faith to become reconciled to his wife and to provide for her, he has since the September term, 1910 "been in good faith endeavoring to be reconciled to his wife and to have her live with him and to make ample provision for her," and "finding no good reason for the parties to longer live separate and apart," the court dismissed the cause at defendant's cost.

The testimony upon which these findings were based occupies 522 pages of the printed record. It is not practicable to set forth within the necessarily narrow confines of a judicial opinion even a full synopsis of such a mass of testimony. The only question raised here which calls for a reference to the testimony is whether the defendant's offer to take his wife back was made in good faith. With that question in mind, we have carefully reviewed the entire testimony, and base our decision of the question last mentioned on that. However, the following statement is, we believe, a fair indication of the general purport or trend of the testimony:

Plaintiff and defendant were married in Mexico, Missouri, April 17, 1907. Both had been residents there for twenty-five or thirty years. Each had been married before. She had a minor son by her former marriage; he had three minor children by his. He was forty-six years of age at the time of the trial, was engaged in the second-hand furniture business, and had property worth some $20,000, and an income of about $175 per month. He was a sober, industrious

man, and both were of excellent moral character. Upon their marriage they, with their respective children, took up their abode in a commodious, well-furnished and desirably-situated residence, which was owned by the defendant. Plaintiff's aged father also soon made his home there, paying no board, though there is some evidence that he did work for defendant to pay for his keep.

For over a year and a half—that is, until about January 1, 1909—happiness reigned supreme in the home, and kindness and respect characterized the conduct of its inmates toward each other. Just what caused an entire change after that date is not disclosed, but thereafter the parties became cold and indifferent and avoided and repulsed each other. He was discourteous, professed not to love her and reproved her in the presence of his children, and she was not without fault. Nothing, however, occurred between the parties which formed any insuperable obstacle to their thereafter becoming reconciled. Affairs culminated in defendant moving plaintiff into another and smaller house owned by him, and then leaving her and filing suit for divorce, charging that she had offered such indignities to him as to render his condition intolerable. He filed the divorce suit on July 21, 1909, the day he left her. He left her no money and little provisions, and after a while ordered the merchants of the town to sell her nothing on his credit. He contributed nothing to purchase food and clothing for her until February 7, 1910, when the court, in this suit for maintenance; made her a temporary allowance of $100 for immediate personal needs, $150 for her attorneys' fees and forty dollars per month thereafter. Until then she subsisted on money she earned, clerking in a department store, and on such credit as she could obtain on her own account, occupying, however, the house he had placed her in, rent free.

On September 29, 1909, while his divorce suit was pending, the defendant herein called upon plaintiff. A Mrs. Tucker was making a call on plaintiff at the time. Thereupon, in the presence of Mrs. Tucker he asked his wife to come back to him. It is needless to describe that offer or incident here. It is described and discussed in another suit between the parties, the opinion in which is handed down with this one. [Creasey v. Creasey, 168 Mo. App. 68, 151 S. W. 219.] It is the same with other offers alleged to have been made up to the time of the first hearing of this suit. It may be accepted that defendant made no sincere offer to return to his wife or to take her back until at least after such first hearing. The divorce suit was dismissed on September 29, 1909, the day defendant first called on his wife after the separation, as aforesaid.

At the first hearing in this suit defendant professed to love his wife, and expressed a desire and willingness to have her come back. On her part, she denied that she had gotten into a temper of mind that she did not love her husband and said that she loved him all the time. She would not say whether she loved him at the time of the trial. She admits that she had done nothing towards resuming her marital relations. Being asked whether she would live with her husband, she was not permitted to answer because of the objection of her counsel.

The evidence on the second hearing tends to prove that after the first hearing—that is, after the court had laid the case over to give the parties a chance to become reconciled—the defendant called on plaintiff three times, trying to induce her to return to him and met with refusals. Then he went to Texas on a visit and while there wrote two letters to her. They are profuse with protestations of love and entreaties to her to come back to him and contain promises to forgive and requests to be forgiven. It does not appear that she answered any but the first letter. In such

answer, under date of July 13, 1909, she told him that it seemed too true that he had already forgotten the way he had "imposed" on her, and suggests that he had written at some other person's suggestion and dictation and not with his own words. She insinuates that he is writing pursuant to a "lesson" in accordance with a "plan." She states that her heart is broken; that she feels entitled to his love and would give the world for it, but that her intuition tells her that it would never do, for he had long since made up his mind to discard and humiliate her. Her letter ends with "I must close for I tremble so as I write this, and I do not want to say anything to discourage either of us in an honest effort to forget our differences." When defendant returned, he called on plaintiff and asked her if, after studying the matter over, she was ready to come back, stating that he was willing to drop all past trouble, and wanted her to do the same. He testified that he made this call upon his wife because he loved her. He repeated these visits twelve to fifteen times, asking her every time to come and live with him. She refused, saying that he was trying to set a trap to catch her in and insisting that he deed her the house on South Jefferson street if she went back, and that he would have to go to her lawyers and settle with them. On October 16, 1910, he wrote to her again in the language of love and persuasion, asking her to come back or to let him come back, promising to treat her right, etc. He asks for one more interview, intimating that he was getting discouraged and would have to give up unless she would consent this time. All the letters mentioned herein are set forth in full in the case before mentioned between the same parties. Finally, she told him that she was "going to let the court pass on it."

During the cross-examination of defendant, plaintiff's attorney asked him whether, if he was required to pay the attorneys' fee, he would pay it rather than

be living apart and separate from his wife, and he answered, "certainly." The attorney then asked him why he did not take her back, and he answered, "She wouldn't go." Thereupon defendant's attorney challenged plaintiff's attorney to dismiss this suit for maintenance promising that defendant would take his wife back if it was done. Defendant interjected at this point, evidently addressing plaintiff's counsel, "Do you suppose I would have gone down after this woman as many times as I have and talked to her the way I have and not take her back; would you have gone after anybody as many times as I have and her sit there and say 'No, no,' every time; would you have gone back like I have if you wasn't sincere? No, you wouldn't, and no other man." Plaintiff's counsel merely answered, "We will see," and went on with his cross-examination. After this cross-examination had become rather acrimonious, impugning defendant's motives and disclosing or developing considerable antagonism between him and the examining counsel, without, we must say, having any tendency to encourage a desire or display of desire on defendant's part for reconciliation, the defendant refused to tell plaintiff's counsel whether he would take his wife back, saying that though he had not given up hope of getting her back and had always wanted her to come back, he would let the court decide the matter, she having told him repeatedly that the court must decide it; that he would not say what he would do after the court had decided the matter, would not say that he would or would not take her back; would not answer the question; would go to her and say what he wanted to say to her regardless of what her counsel did or said.

It seems that plaintiff's attorneys filed herein a motion for an allowance of additional attorneys' fees, 'and for grounds thereof says that she willingly forgives the defendant for those unhappy differences which impelled her maintenance of the present suit,

and purposes to faithfully discharge all of her duties as the wife of defendant.'' Defendant testifies that, after this motion was filed, he met his wife and asked her if she meant what was said in.it, and she said she did. He told her the court had already allowed her attorneys $150. She said he ought not to pay it again if that was the case. He proposed then that they go right away to the court house and dismiss this proceeding. She said, ''No sir, I am going to let the court pass on it.''

As we have already mentioned, the plaintiff refused to offer any evidence on the second hearing.

CAULFIELD, J. (after stating the facts).— Plaintiff's counsel advances the theory that the only issues of fact that could be raised or tried were whether the husband, without good cause, abandoned his wife and neglected or refused to support her, and that therefore it was error for the court to consider the question whether the defendant was able and willing to resume his duty of making proper provision for his wife and to become reconciled to her and honestly endeavored to do so. Carrying this theory to its logical conclusion, plaintiff's counsel contends in his brief that an abandonment and failure to provide for the wife having been shown to have existed, ''the only thing remaining was for the plaintiff to determine upon what length of time she desired a separate maintenance and support to be awarded, and if substantial evidence was adduced supporting her prayer, it then became the duty of the court to award it for such period of time, so that, when the plaintiff in the case at bar requested an allowance for the remainder of her natural life and predicated her prayer upon the proposition that the defendant · had given plaintiff cause for divorce, a decree in accordance with her prayer was the only allowance the court could make.'' Such theory and the contention based on it are with-

out merit or precedent to sustain them. The courts of various states differ as to whether they have power, without statutory authority, to make and enforce an allowance for separate maintenance except as incident to a divorce proceeding, but there does not seem to be any question that a sincere offer on the husband's part to take back and maintain the wife and treat her with conjugal kindness and affection will generally defeat her right to a separate allowance. [21 Cyc. 1602; Kenley v. Kenley, 2 Howard (Miss.), 751; Hair v. Hair, 10 Richardson's Equity Reports, (S. C.) 163; Schraeder v. Schraeder, 26 Ill. App. 524; McMullin v. McMullin, 123 Calif. 653; Skittletharpe v. Skittletharpe, 130 N. C. 72.] The wife gets no vested right to separate maintenance because her husband has abandoned and refused to provide for her. Such right ceases if he does not persist in such wrongful conduct and sincerely offers to resume his marital relations and obligations. [Schraeder v. Schraeder, supra.] Nor is the husband's offer to deal rightly by his wife any the less effective to defeat his wife's right to separate maintenance because made after being sued for separate maintenance or even after a judgment in such suit, though of course the lateness of his repentance might be considered in adjudging the question of his sincerity. [Schraeder v. Schraeder, supra.] In fact, the judgment should be so framed as to anticipate that contingency and allow only for a separate support to the wife until he will take her back and treat her with conjugal kindness and affection; and such are the usual terms of such judgments. [1 Bishop on Marriage, Divorce and Separation, sec. 1417.] If he should sincerely become willing and offer to do that, the necessity for separate maintenance would cease. [Skittletharpe v. Skittletharpe, supra.] If the judgment was otherwise drawn, it would still be the duty of the court to refuse to enforce it, if it appeared that the parties had come

together again, or that the husband was willing to assume his marital relations and obligations and was prevented only by his wife's refusal from doing so. [Reid v. Robinson, 9 Lower Can. Jurist, 103.] Our statute is in harmony with the foregoing ideas, for it provides that the support and maintenance shall be "for such time as the nature of the case and the circumstances of the parties shall require," and that the court shall "from time to time make such further orders touching the same as shall be just." [Sec. 8295, R. S. 1909.]

Applying these principles to the facts of the case at bar it is evident that the trial court did not err in denying plaintiff a judgment for separate maintenance, it being satisfied by substantial evidence that defendant was willing and had repeatedly offered to resume his marital relations and obligations, and was prevented from doing so only by the refusal of his wife.

It was not error for the court to take the case under advisement and postpone its decision to a later day, and, if it had been, plaintiff did not preserve the point by excepting to such action. [Kuhl v. Kuhl, 160 Mo. App. 363, 140 S. W. 949.] Plaintiff did not suffer because of the postponement, for in the meantime she was enjoying an allowance for temporary maintenance.

Neither did the trial court err in reopening the case and hearing additional testimony bearing on defendant's attempts, after the first hearing, to effect a reconciliation with his wife. It is a matter of discretion with the trial court to admit or exclude testimony after a case has once been closed and such discretion will not be interfered with except in case of its manifest abuse. [Kuhl v. Kuhl, supra.] And in a suit like this for separate maintenance, where, as we have seen, the judgment, if for plaintiff, would not be a final one, in the sense that term is usually

used, but would only be for separate maintenance until the husband was sincerely willing to resume his marital relations and obligations, and would not preclude him from afterwards seeking to effect a reconciliation, evidence of the husband's present attitude would be clearly pertinent to the matter before the court, for it would be idle to enter such a judgment if the husband was then willing to do his duty and, therefore, separate maintenance was not necessary.

Likewise it was not error for the trial court to modify the declaration of law offered by the plaintiff, which declared that if defendant abandoned plaintiff without cause, she was entitled to a separate maintenance, by adding thereto, "until defendant resumes his duties of making proper provision for his wife and becomes reconciled to her or honestly endeavors so to do." Such addition was in entire harmony with the law as above mentioned.

Plaintiff further contends that the finding that the defendant's offer to take her back was made in good faith is not supported by any evidence in the case. It is clear that there is no foundation for this contention. The evidence tending to support such finding was ample and was substantially, if not entirely, uncontradicted, as will be seen from our statement of the facts. The plaintiff, though given an opportunity, refused to offer any testimony on that subject.

Nor are we inclined to disturb the judgment because the husband finally refused to tell counsel for plaintiff what he would do in the matter of taking his wife back. It is fair to infer that by that time, that is, at that point in his cross-examination, he had become aggravated and wroth at plaintiff's counsel and resented the manner of his cross-examination, and such refusal could more readily be attributed to mere temporary spleen directed at plaintiff's counsel than to a real disposition not to resume his marital relations.

Especially is this so when his testimony as to his endeavors to make up with his wife and his declarations in the prior part of his testimony are considered.

We may add to the foregoing that if the plaintiff returns to her husband and he should illtreat her to such an extent as to justify her living apart from him, or if, upon an unequivocal attempt to return to him, he shall repulse her or refuse to cohabit with her as her husband, the decree in this case will not bar her remedy against him. [Schraeder v. Schraeder, 26 Ill. App. 524, 525.]

The judgment is affirmed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.