Edward Lee HEARN, Plaintiff-Respondent,

v.

Edythe Alberta HEARN, Defendant-Appellant.

No. 24967.

Kansas City Court of Appeals.

Missouri.

Dec. 2, 1968.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 3, 1969.

Donald H. Loudon, Kansas City, for appellant.

Woods, Raymond & Raymond, Hammond C. Woods, Kansas City, for respondent.

MAUGHMER, Commissioner.

We have here a divorce case. The plaintiff below and respondent here, Edward Lee Hearn, and the defendant-appellant, Edythe Alberta Hearn, were married on September 17, 1929. Two sons, William and Donald, were born to the marriage. Both sons are now of age and self-supporting. Mr. and Mrs. Hearn separated on June 1, 1953 and have lived apart ever since.

On July 23, 1960, the parties entered into a written property settlement, which was read into the divorce trial record. Under this settlement it was agreed that Mrs. Hearn was to reside in the jointly owned residence and have the free use of it and the furniture. Mr. Hearn agreed to pay three-fourths of the taxes levied against the residence property and Mrs. Hearn agreed to sign their joint income tax returns. She was also to receive $20 per week as support or alimony from Mr. Hearn. This property settlement made reference to a pending separate maintenance suit and stated that the settlement itself should become a part of any judgment entered therein. Three days later on July 26, 1960, a decree was entered in the separate maintenance suit in the Circuit Court of Jackson County, Missouri. The judgment therein required the husband to pay $20 per week as support for his wife. The decree recited the presence of plaintiff and her attorney and the appearance of defendant by his attorney. It also adjudged that defendant, without good cause, had abandoned the plaintiff, and refused to maintain and provide for her.

Trial of the divorce suit was held in the Circuit Court of Platte County, Missouri on August 3, 1967. Mr. Hearn testified that in 1953 or 1954, a Kansas court had entered a decree of separate maintenance and that in late 1954, he had unsuccessfully sought a divorce in Missouri. No formal or record proof was made as to these matters.

Four witnesses testified at the divorce trial. Mr. Theodore Shell and Mr. Milton C. Edwards stated that Mr. Hearn's reputation was good. The other two witnesses were the plaintiff himself and his long-time housekeeper, Mrs. Mary L. Reams. Mrs. Reams' testimony may be summarized as largely a denial of the insinuations that she was more than Mr. Hearn's housekeeper. Although defendant was present at the trial in person and with her attorney, she offered no testimony. On October 6, 1967, after having had the matter

under advisement for more than sixty days, the trial court granted the husband a decree of divorce on the ground of indignities and also decreed that "Plaintiff's obligation for the separate maintenance of the defendant is hereby abrogated, terminated and vacated."

On appeal the defendant lists two assignments of error. She says (1) "There is no evidence to support the finding that defendant is guilty of such indignities which allow a divorce under Missouri law" and (2) It was error to grant plaintiff a divorce because "the res judicata effect of the separate maintenance decree entered July 26, 1960, in favor of defendant precluded a finding that plaintiff was an innocent party entitled to a divorce since plaintiff failed to plead or to show in evidence any change or excuse for his fault which had been previously established."

■ Appellant is entitled to a review of the evidence by this court, which is obliged to reach its own conclusions and affirm or reverse as justice under the law requires. However, we should accord deference to the conclusions of the trial judge, who had the advantage of seeing the witnesses, observing their demeanor and conduct and being thereby better able to weigh and evaluate the testimony. Dallas v. Dallas, Mo.App., 233 S.W.2d 738, 740. If the findings and decree are clearly erroneous, we should enter a correct judgment. Waters v. Waters, Mo.App., 357 S.W.2d 233, 240.

■ A suit for separate maintenance, based upon abandonment, is an action authorized specially by Section 452.130, V.A.M.S. The Supreme Court has held that an absolute divorce and a divorce from bed and board (separate maintenance) "are substantially indivisible portions of the one action for divorce." Ellis v. Ellis et al., Mo.Sup., 263 S.W.2d 849, 853. The two actions are so kindred that a judgment or decree in a separate maintenance suit is res judicata not only as to all issues tried, but as to all issues which, in the exercise of reasonable diligence, might have been litigated therein. Ackley v. Ackley, Mo.App., 257 S.W.2d 404, 407; Price v. Price, Mo.App., 281 S.W.2d 307, 309; Dallas v. Dallas, Mo.App., 233 S.W.2d 738, 745.

■ In the case before us the separate maintenance decree was predicated upon a finding of abandonment. The judgment entered therein on July 26, 1960, is res judicata as to facts and grounds which existed and arose prior to July 26, 1960 and determinable in that action. But such judgment is manifestly not determinable or conclusive as to future occurrences. As stated in Dallas v. Dallas, supra, page 746: "It is true that a judgment cannot be made the basis for an estoppel as to facts which did not occur until after the judgment was rendered, * * *." The parties apparently recognized these rules and in the trial of the divorce case sought to restrict the evidence to those events which took place after entry of the separate maintenance judgment.

Plaintiff's petition alleged indignities as his ground for divorce and the decree is predicated upon a finding of such indignities as under our law constitute a legal cause for divorce.

While every case must stand upon its own bottom, the courts through the years, have given us many guidelines, which help in determining what acts of misconduct are sufficient in degree, severity and frequency as to constitute the required statutory indignities. The statute (Sec. 452.010, V.A.M.S.) lists various grounds for divorce and declares that one spouse may obtain a divorce if the other spouse "shall offer such indignities to the other as shall render his or her condition intolerable."

■ Our appellate courts have declared: a single act or occasional acts or isolated incidents will not suffice. Rogers v. Rogers, Mo.App., 399 S.W.2d 606, 612. The episodes complained about must amount to insufferable, intolerable indignities and in determining if such acts do,

the background of the principals should be considered. Clemens v. Clemens, Mo. Sup., 235 S.W.2d 342, 346. To constitute indignities sufficient to warrant granting a divorce, ordinarily, the indignities must amount to a continuous course of conduct, and a single act or word, or occasional acts or words, will not suffice. The course of conduct must be such that it connotes settled hate and plain manifestation of alienation and estrangement. Moore v. Moore, Mo.App., 337 S.W.2d 781, Syl. 5–6. The acts relied upon must amount to a species of mental cruelty and evidence a course of action whereby the other's condition is rendered intolerable. Clark v. Clark, Mo.App., 306 S.W.2d 641, 646. The party alleging the indignities has the burden to establish the truth of the charges by a preponderance of the credible testimony. Waters v. Waters, Mo.App., 357 S.W.2d 233.

We consider plaintiff's evidence and weigh his proof in order to determine if he has carried the burden of proving such statutory indignities as entitled him to a divorce. The indignities as alleged by plaintiff are in five categories. (1) He said that his wife on many occasions refused to sign their joint income tax returns. Since these people were not divorced, plaintiff could not deduct the support payments made either voluntarily or under the separate maintenance judgment, as alimony. However, they could still file joint income tax returns and this would effect a substantial savings to plaintiff as compared to the income tax he would be required to pay under a single person's return. In this connection it should be stated that plaintiff has always been employed since inception of the marriage and defendant has never been. (2) He testified that he sent to Mrs. Hearn some state of Kansas income tax refund checks, that she cashed those checks and claimed the proceeds as her own and refused to give him credit therefor on the support allowance. (3) Since 1954, Mrs. Mary L. Reams has resided in the same house as plaintiff

and has been his housekeeper. For the last several years his granddaughter, now 9 years old, has lived with them. Mr. Hearn charged that his wife employed two detectives, who on one occasion, inquired of numerous families and persons in the neighborhood where plaintiff lived, if plaintiff and Mrs. Reams were living under the names of Mr. and Mrs. Hearn. He said these investigators also inquired as to the general reputation of "Mr. and Mrs. Hearn", (referring to plaintiff and Mrs. Reams). He knew of these inquiries only through hearsay, that is, through conversations with and reports to him by his neighbors. He said he was sure these inquiries had been instituted and instigated by his wife as he knew of no one else who would do it. (4) He declared the "personnel man" at the plant where he worked told him to get his wife to stop "sending nasty cards and making nasty telephone calls" to the plant. He said she had done these things many, many times and over a period of years. (5) He testified that Mrs. Hearn sued out "12 or 15" garnishments and restraining orders against him, claiming he owed her support payments, or attorney fees or tax money, and that on all of these occasions but one or two, he owed her nothing. He was not sure that all of these "haulings into court" came after the separate maintenance judgment. He said that by reason of these garnishments and the various other suits he had been in court "so many times some of the judges call me by my first name."

Now, the only testimony as to these alleged indignities came from the plaintiff himself. His case would be stronger if there had been some corroboration from disinterested witnesses. However, his testimony was not denied in any aspect, particular or detail. The defendant and her attorney were present in court throughout the trial. The attorney cross-examined plaintiff but defendant and her counsel elected not to have defendant take the stand or offer any testimony. Plaintiff's testimony, therefore, including his descrip-

tion of the alleged indignities, stands undenied (except under the pleadings), unrebutted and unexplained. We believe under these circumstances we should give it more credence than if defendant had countered the charges. Then, too, with these parties living apart, we would expect the episodes to be less frequent and possibly not so diversified as if they had been living under the same roof.

This marriage has been in existence more than 39 years. The two sons have reached maturity. This husband and wife have been separated for more than 15 years. It appears unlikely that the marriage relationship will ever be renewed. In 1953, this couple apparently decided to separate but without invoking the good offices of any court to determine which one was more at fault. This arrangement continued so far as the record before us is concerned, until July, 1960, when a property settlement was made and thereafter what appears to have been a default separate maintenance decree was entered in court. That decree or judgment found plaintiff guilty of abandonment without just cause. Defendant says on the present appeal, that this adjudication that plaintiff is guilty of abandonment makes it impossible for him to be an innocent and injured party, which the recipient of a divorce, under our laws, must be. Since entry of that judgment some eight years ago, plaintiff has furnished a residence (bought with his money) to defendant for her use. He has paid a substantial part of the taxes thereon and has paid defendant $20 per week toward her support and maintenance. In the face of these facts it cannot reasonably be said that plaintiff is now and has been since July, 1960, guilty of complete abandonment of defendant. Moreover, the findings of July, 1960, do not continue forever after or stand as an adjudication of future events. Such a judgment is not irrevocable. Prichard v. Prichard, 189 Mo. App. 470, 176 S.W. 1124, 1125.

The indignities which plaintiff describes and says are sufficient to entitle him to a divorce are somewhat unsubstantial as to severity and scanty in number and frequency. However, such might be expected from persons living separate and apart. Their separation lessens not only the arenas but the opportunities for contests and conflicts. We are convinced that Mrs. Hearn sought to harass, injure and embarrass plaintiff. She was overquick to utilize the courts in her efforts to exact precise and instant payment of her support money. She harassed plaintiff "on the job" and with his employers, not because such was necessary to secure her just dues, but rather to damage his reputation and endanger his employment. She refused to sign the joint income tax returns. Such refusal did not redound to her benefit. Its only purpose could have been to harass plaintiff and if persisted in to the extreme, would have cost plaintiff several dollars in additional tax. In our opinion these acts as described by plaintiff and which stand undenied and unrefuted by defendant, indicate a studied purpose to harass and damage plaintiff financially and as to his reputation where he worked and where he lived. True, the wounds inflicted, the hurts given and the indignities of which she is guilty were not of the worst or of the most severe kind. They were not "so deep as a well, nor so wide as a church door; but 'tis enough, 'twill serve", and is justification, in our opinion, after giving due deference to the findings of the chancellor, to authorize granting a divorce to plaintiff.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.