Joseph J. McGEHEE, Plaintiff-Respondent,

v.

Myrtle M. McGEHEE, Defendant-Appellant.

No. 8882.

Springfield Court of Appeals.

Missouri.

Oct. 20, 1969.

Esco V. Kell, West Plains, for defendant-appellant.

Harold L. Henry, West Plains, for plaintiff-respondent.

TITUS, Judge.

The second marriage for both the 82 year old plaintiff-husband and the 74 year old defendant-wife, according to the accounts of each, survived for much of its 37 years amidst circumstances foreign to the connubial bliss enjoyed ever after by the heroes and heroines of storybook fame. Concluding that "I just don't want to be bothered the rest of my life" with the indignities allegedly offered by the wife to render his condition intolerable (§ 452.010, V.A.M.S.), the husband sued for divorce and the Circuit Court of Howell County answered his prayer. The wife, who asseverates she does not want the bonds of matrimony put asunder, has appealed.

As they appear in her brief, defendant's "Points Relied On" present studies in abstraction penned heedless of Civil Rules 83.05(a) (3) and (e), witness: "I. That the court erred in entering judgment for the plaintiff, because plaintiff's evidence is insufficient to justify a decree of divorce for plaintiff on the ground of general indignities. II. That the court erred in entering judgment for plaintiff, because the judgment is against the evidence and the greater weight of the evidence. III. The rule is that in a divorce case, the Appellate Court will exercise its duty to try the case de novo and enter such judgment in the case as the trial court should have entered from a review of the evidence."

We perceive Point III as the assertion of an abstract principle of law that preserves nothing for review [Bowers v. Spinaio, Mo.App., 421 S.W.2d 790, 792–793(5)] because there is no effort made to show how the axiom relates to the action of the court as required by the rule. Yates v. White River Valley Electric Co-Operative, Mo.App., 414 S.W.2d 808, 811(3).

It has been repeatedly held that assignment II, supra, presents nothing for review on appeal [School Services of Missouri, Inc. v. Caton, Mo.App., 419 S.W.2d 954, 956(1)], yet this abstraction, through total abandonment to tolerance, has been interpolated into an advisement to "the court that [defendant] contends that the evidence was insufficient to support the judgment." Modes v. Modes, Mo.App., 402 S.W.2d 14, 15(2). If we, too, so consider as-

signment II, it is no more nor less than assignment I—which all told leaves us with the single question of the sufficiency of the evidence to support the judgment. Civil Rule 73.01(d), V.A.M.R. Although the last cited rule provides, inter alia, that in court tried cases "the appellate court shall review the case upon both the law and the evidence," it need perform this function "only in respect to the specific matters urged by appellant as constituting error. It does not review the whole case on its own initiative to determine what result it would have reached if it were sitting as the trial judge." Schlanger v. Simon, Mo., 339 S.W.2d 825, 828(1).

One reason for the rule requiring the "Points Relied On" to state specifically wherein and why an appellant contends the trial court was wrong, is to facilitate a recitation in the opinion of only those facts necessary to decide the issues presented on appeal. We have not been favored with such a guide, but rather than execute a summary disposition of the appeal because of this deficiency in the brief, we seek out defendant's argument in an effort to ascertain the exact issues involved to permit disposition of the case on its merits. Civil Rule 83.24, V.A.M.R. According to our understanding, defendant urges in her argument that plaintiff's evidence did not "measure up" to the proof necessary to establish defendant's guilt of indignities, principally because the proffered testimony was illustrative of only infrequent acts or words of misconduct. This is premised upon the oft repeated declarations that to constitute indignities sufficient to warrant the granting of a divorce, the episodes complained of must amount to an intolerable continuous course of conduct that connotes settled hatred and a plain manifestation of alienation and estrangement equaling a species of mental cruelty, and must evidence a course of action whereby the other's condition is rendered intolerable. A single act or word, or occasional acts or words, will not suffice. Hearn v. Hearn, Mo.App., 437 S.W.2d 153, 155–156(5–8).

The gist of plaintiff's complaints was that over a number of years his wife fussed at and quarreled with him continuously, that "she wanted to be boss and has been for a long time. * * * [If] she'd take a notion for anything, well it had to be that a way. * * * But every little thing, it builds up. You know, it gets worse. * * * She's called me different vile names. * * * Called me a son-of-a-bitch many times." Defendant testified the plaintiff "never heard me call him no names like that," and while she "supposed" the quarreling had gone on for a long time, she insisted the plaintiff "always started the fussing * * * he always started all of the quarrels with me." To minimize the ferocity of these verbal altercations defendant's brief alludes to them as "the small bickering * * * a normal happening in a long life"; but on the witness stand defendant avowed the quarrels were of such intensity that when they occurred she "had to go out the back door and stay in the back yard or go to the wash house to get away from him." Plaintiff's married daughter related that the pair "didn't get along" from the time she was 14 or 15 years old, whereas defendant's son and daughter-in-law opined that plaintiff and defendant encountered controversies and difficulties "no more than anyone has," whatever that may mean. An across-the-street neighbor of the litigants asserted that "over quite a period of time" he had overheard the defendant fussing at the plaintiff and "heard her call him names * * * heard her call him a son-of-a-bitch * * * two or three [times]."

An incident which transpired about the first of July 1968 generated a considerable amount of testimony and divergent versions of the fracas. Plaintiff had been visiting with one of his daughters in Arkansas and got "some of my kinfolks to take me home" to get some clothing. When they arrived, according to plaintiff and his kith, the defendant "told us to get * * * off her property and I was in a two seated car and I got my right foot on

the ground and she said 'get in that car and get out of here.' * * * Like I didn't have no authority there. * * * And that ain't the first time she told me to get my clothes and leave." Defendant denied she told the plaintiff to leave but "just went out there and told these others to get out of my driveway and for him to come on to the house and he left." A deputy sheriff was summoned, and the account of this intermediary is that when he arrived "I went up [to the house] and explained to [defendant] that [plaintiff would] like to get his clothes * * * without any quarrel and fuss. * * * So she fixed them and told him to get his clothes and get on out and leave her alone." Defendant, both at the trial and upon appeal is adamant that there had been no separation, as such, prior to July 1968, and that plaintiff's exit on this occasion was "voluntarily by his own decision." To the contrary, plaintiff testified "You might say we have been" separated "over the years," and when asked if he had filed "for a divorce back some fifteen years ago," plaintiff replied, "I guess you could call it that * * * I wanted for us to get along and couldn't. So we had our papers fixed up but she kept on. * * * Just like she is now." Although still insisting there had been but one separation, defendant acknowledged she had signed a "reconciliation agreement" in 1953 and a "post-nuptial agreement" in 1959.

■ The term "indignities," as employed in § 452.010 as a ground for divorce, is purposely indefinite and general, for the feelings of different persons vary to such a degree that actions and words which would produce distress to one would make only a slight impression upon the feelings of another. Rogers v. Rogers, Mo.App., 430 S.W.2d 305, 309(3). It is for that reason, as well as others, that each case in which a divorce is sought on the ground of indignities must necessarily be determined by its own facts [Mayor v. Mayor, Mo. App., 351 S.W.2d 810, 813(2)] and, as de-

fendant has suggested, it is our duty in a divorce case to review the cause upon both the law and the evidence, to reach our own conclusion and, where there is as here a direct conflict between the testimony of the husband and wife on nearly each point in issue, to apply the rule of deference to the conclusions of the trial judge who saw and heard the witnesses on the stand. Gicinto v. Gicinto, Mo.App., 414 S.W.2d 339, 341(1); Grant v. Grant, Mo.App., 324 S. W.2d 382, 386(1).

■ Whether a term expressing opprobrium qualifies as a legal indignity depends upon various factors, not the least of which, it seems, are direction, the peculiar sensitivities of the jurist involved, and the sex of the addressee. Such expressions as "hell," "damn" and "God damn son of a bitch" do not attain the dignity of an indignity when employed by a husband in the presence of his wife, provided the words are directed to the world in general and not to the wife in particular. Schwarz v. Schwarz, Mo.App., 427 S.W.2d 734; Llewellyn v. Llewellyn, 229 Mo.App. 1178, 88 S.W.2d 235. It has been held that no indignity resulted when a wife called her husband "a clodhopper," but the judge, with suspected roots in Erin, said she nearly went too far by referring to her spouse's relatives as "shanty Irish." Elliston v. Elliston, Mo.App., 215 S.W.2d 63. In Moore v. Moore, Mo.App., 337 S.W.2d 781, the appellation "hillbilly" applied by a wife to a husband was said, in Southern Missouri, to be neither an insult nor an indignity but "an expression of envy." On the other hand a blade who invited his distaff "to go to hell" and requested that she "shut her God damn mouth" on the pretext she was a "God damn liar" (O'Neil v. O'Neil, Mo.App., 264 S.W. 61), the husband who had the habit of addressing his mate as "a bitch" (Spainhower v. Spainhower, Mo.App., 441 S.W.2d 755), and the man who denominated his wife as "a whore" and "a liar" when she was neither, all received judicial assurance such appellations readily qualified as indignities of

the first degree. Epithets do not usually incite assaults from the craven or lawfully justify batteries by the hardy. State v. Brown, Mo., 165 S.W.2d 420, 422(4). Nonetheless, the ordinarily imprudent man or woman who hails another as a son of a bitch, especially if the greeting be refined into the particular kind of a son of a bitch the addressee happens to be, may reasonably anticipate prompt retortion evidenced in most instances by an effluent epistaxis. But even if such a salutation fails to promote physical retaliation, it seldom is harkened unto as a note of endearment and its repetition can become so tedious to even the most insensitive listener as to constitute an indignity.

■ Because of the amount of time devoted to the July 1968 incident at trial, defendant appears to see it as an isolated occurrence unrelated to prior events. We do not so consider the matter, and while we agree with defendant that many of the responses given by the 82 year old plaintiff were rambling in nature, we cannot say that for this reason alone his testimony was wholly unworthy of belief or that the self-contradictory statements of the defendant should be ignored. The neighbor's testimony corroborated plaintiff's assertions that he had been called names by the defendant and that the fussing had been commonplace "over quite a period of time." Even the defendant "supposed" the quarreling had gone on for a long time, and the evidence that a divorce suit had been previously instituted and a reconciliation agreement made attests that the July 1968 happening was not the first and only straw to sway the matrimonial back of the parties. The mere fact some relatives and acquaintances of the couple were unaware of their difficulties does not prove trouble did not exist, for, as Washington Irving observed in Rip Van Winkle, "Those men are most apt to be obsequious and conciliating abroad, who are under the discipline of shrews at home." We are not disposed to believe the plaintiff was so insensitive that being called a son of a bitch by his wife did not

inflict mental anguish or convey a message and feeling of contemptuous hatred. Neither spouse is required to submit to a continuous course of abuse, continued bickering or gross insults. The rights of one spouse, albeit those of the husband, are entitled to the same consideration as the rights of the other. "[J]ustice is the chief end of the law, and in its equal application sex is unseen and unknown." Trigg v. Trigg, 226 Mo.App. 284, 297, 41 S.W.2d 583, 590.

The case was decided by an able and conscientious trial judge who had the better advantage to observe the demeanor and determine the reliability of the witnesses. We are satisfied with his conclusions and so affirm the decree.

HOGAN, P. J., and STONE, J., concurs.