James H. LOVINGOOD, Respondent,

v.

Ella Deborah LOVINGOOD, Appellant.

No. 25490.

Kansas City Court of Appeals, Missouri.

Oct. 4, 1971.

James R. Hunsucker, Kansas City, for appellant.

Leona Pouncey Thurman, Kansas City, for respondent.

DIXON, Commissioner.

A decree of divorce was granted to the plaintiff-husband, respondent here, by the Circuit Court of Jackson County. The defendant-wife, appellant here, has brought her appeal contending that the Circuit Court erred in granting the divorce because the pleadings and evidence in the present suit related to matters prior to a previous judgment in a separate maintenance action.

She thus raises a question of *res adjudicata* by reason of the prior separate maintenance judgment in her favor and claims that all of the matters in the present divorce action were previously determined in that maintenance action.

At the outset, we are compelled to say that this "marital ship" is in worse shape than the one described in Paxton v. Paxton, Mo.App., 319 S.W.2d 280, 287, which was "hard aground on reefs and rocks." This vessel has suffered such a barrage of divorce actions as to spring every plank and founder. As we read this record, this is the eighth divorce action between these parties. The first one was filed in 1958 which appears to have been one year after the marriage, and the last one, the one we are considering, was filed in 1969.

Turning now to the pleadings in this case, we have a plaintiff-husband alleging conventionally the residency and marriage of the parties and a separation. The pleading of the grounds for divorce is garbled and redundant. Defendant has not challenged the petition either in the Circuit Court or here. Plaintiff alleges as his principal ground for divorce a separation, his efforts at reconciliation, his wife's refusal to reconcile, and thus a constructive desertion on her part. He also pleads matters of indignity by way of "quarreling and nagging."

The defendant, in response to this divorce petition, contented herself with filing an answer which set up a decree of separate maintenance rendered in the year 1966 and its legal effect as *res adjudicata* of matters raised in plaintiff's petition. There is *no denial* of the material allegations of plaintiff's petition.

Turning now to the 1966 separate maintenance action between the parties, the defendant-wife introduced in evidence the record of that proceeding, and we summarize those proceedings by saying that the husband filed for divorce, alleging many indignities. His wife filed answer containing allegations of indignities by way of re-

crimination and a cross bill in the nature of separate maintenance on the grounds of desertion. Upon a hearing, the court entered a judgment of separate maintenance in favor of the wife although it does not appear whether the decree was based upon actual desertion or constructive desertion. In any event, the wife was granted a decree of separate maintenance.

We now posit appellant's contentions on this appeal. Appellant's brief contains two points. Her first point is that the court erred in granting the divorce because the "matters" referred to in the petition and testified to by the plaintiff were *res adjudicata* as a result of the separate maintenance judgment. Her second and closely related point is that the court erred in granting the divorce because the separate maintenance judgment had denied the respondent a right to a divorce. Presumably counsel refers to a finding of misconduct which would deny plaintiff status as an injured and innocent party.

In the argument portion of the brief, appellant relies upon Dallas v. Dallas, 233 S.W.2d 738, 745, SLA 1950; Meyer v. Meyer, 236 S.W. 382, 383, KCA 1922; Ackley v. Ackley, 257 S.W.2d 404, 407, SPA 1953; Price v. Price, 281 S.W.2d 307, 309, SPA 1955; State ex rel. Ward v. Stubbs, 374 S.W.2d 40, Mo.1964; contending that these cases bar the present action, and she asserts that the petitions in the September, 1966 separate maintenance action and the present divorce action show the same grounds of recovery, that they were between the same parties and are therefore *res adjudicata* as to those matters.

We take it from the transcript and the briefs that the marriage of the parties, their separation and the fact that there are no children are not in issue. Thus, two mat-

ters remain at issue between the parties, first, the question of the status of plaintiff as an innocent and injured party, and second, his grounds for divorce in the present action.

Appellant insists that there was an adjudication at the time of the decree of separate maintenance of the innocence of the plaintiff-wife in that action and the corresponding misconduct of the defendant-husband which constitutes a bar to his present action.

 Only a wife has an action for separate maintenance. If she receives a decree, it is well settled that it must be upon grounds sufficient to enable her to obtain a divorce.[1] She must also be the innocent and injured party.[2] Appellant reasons from those propositions that an adjudication of separate maintenance necessarily decided fault against the defendant-husband and innocence in favor of the plaintiff-wife which continues to the present.[3] If that reasoning were followed, the marriage is thus perpetuated by the legal magic of res adjudicata to a more enduring form than society, religion and law have been able to devise. The adjudication of innocence and fault at the time of the separate maintenance action is no more preclusive than any other adjudication upon the facts at the time of the entry of decree, and the factual situation after the decree may give rise to a different adjudication in subsequent litigation. Thus, in Hearn v. Hearn, Mo.App., 437 S.W.2d 153, the court found a basis for adjudicating a divorce between a husband and wife, upon the suit of the husband, after a decree of separate maintenance in favor of the wife and expressly ruled the question with respect to the continuing fault of the husband. The opinion there points out that

1. Forbis v. Forbis, Mo.App., 274 S.W.2d 800, 807.

2. Oakes v. Oakes, Mo.App., 303 S.W.2d 940, 943.

3. The cases relied upon by appellant do not support the absolute proposition she infers

from them of final adjudication upon all facts, but only upon those facts known to the court at the time of the entry of the decree. Cf. the discussion of these authorities in Hearn v. Hearn, Mo.App., 437 S.W.2d 153, 155 [4].

such a finding in the separate maintenance action could only be upon the basis of the facts known to the court at the time. Thus, subsequent actions of the parties can give rise to a different factual determination. In this case, the prior adjudication of a decree of separate maintenance did not bind the trial court in determining the question of the plaintiff's right to bring this divorce action on the grounds of being the innocent and injured party. The trial court, by its decree, made a finding in favor of plaintiff on that issue. Plaintiff asserted he has supported his wife. He was vigorously cross examined on this branch of the case. He earnestly insisted throughout his testimony that he had, in fact, supported his wife and that she had taken the property in which she now lives in partial satisfaction of her judgment for support and that thereafter he had, pursuant to the order of some unnamed court, paid her $20 per week for support. The record is far from satisfactory in disclosing the basic facts concerning this issue, but we believe it shows substantial compliance with the decree. We cannot say the trial court was plainly in error in finding the plaintiff was the innocent and injured party because there is no countervailing evidence of any kind that would support a finding of misconduct on his part sufficient to bar his divorce action. We find that the evidence subsequent to the decree of separate maintenance supports the trial court's finding that the husband is the innocent and injured party, and he may maintain this action so far as that requirement is concerned.

■ As we have noted, we read plaintiff's divorce petition as alleging grounds for divorce on the basis of both indignities and desertion or abandonment. Appellant has vigorously contended that plaintiff's evidence will not support a divorce on the ground of indignities because all of his testimony as to indignities referred to matters occurring prior to the separate maintenance decree and were, therefore, merged into the judgment of the court in that action and may not afford the basis for this decree. Examining this record as a whole, we must agree that insofar as the plaintiff's evidence deals with the question of general indignities the plaintiff's evidence cannot support the decree since he testified three or four times on cross examination that all of his "complaints" relating to his claim of "indignities" by his wife occurred prior to the 1966 decree.

What we have said thus far makes it apparent that if we are to affirm the action of the trial court in granting plaintiff a divorce, it must be upon a theory of desertion subsequent to the separate maintenance decree.

■ We have found no case directly in point on the facts of this case, but believe that persuasive authority exists for the proposition that a defendant-husband, after a decree of separate maintenance, may assert desertion as a ground for divorce, assuming a factual basis for such desertion is established. To prove desertion under the provisions of section 452.010, three elements must be established, namely, cessation from cohabitation without reasonable cause for one year, an intention on the part of the deserter not to resume cohabitation and the absence of consent to the separation on the part of the deserted. Price v. Price, Mo.App., 281 S.W.2d 307, 312. Forbis v. Forbis, Mo.App., 274 S.W.2d 800, 807.

In Creasey v. Creasey, 168 Mo.App. 98, 151 S.W. 215, the court considered the question of the husband's right to a decree of divorce on the basis of desertion following a decree of separate maintenance in favor of the wife. This extremely well-reasoned case holds that the husband could maintain such an action upon showing a bona fide offer of reconciliation unreasonably repulsed by the wife, thus giving rise to desertion on her part. Under settled law, if such desertion continued for one year, it is valid ground for divorce. In analyzing the factual situation, the court found that the husband had made a bona fide offer, but denied him a divorce since on the

court's analysis of the evidence, the bona fide nature of the offer of reconciliation was not demonstrated until after the decree of separate maintenance and not for the necessary period of one year prior to the filing of his divorce action.

We note another case in Missouri which has considered the question of divorce subsequent to a decree of separate maintenance because we deem the reasoning of that case relevant to the issue here presented. In Prough v. Prough, Mo.App., 308 S.W.2d 294, the court reviewed extensively the authority in the State of Missouri and elsewhere touching upon the question of the effect of a separate maintenance action upon a subsequent action for divorce. The court held that the wife, having obtained a separate maintenance decree under evidence showing a desertion, could thereafter bring her action for divorce and obtain a divorce on the basis of the proof made, that desertion had occurred at the time of the separate maintenance action and it had *continued* until the date of the divorce. That is, of course, not the case we have here, but the reasoning of the court is pertinent to the inquiry we must here make. The court there reasoned that unless the wife were permitted in those circumstances to obtain a divorce decree upon proof of the continuation of the cause for decree of separate maintenance, the effect of the decree of separate maintenance would be to provide a more binding relationship between the parties than the marriage relationship itself. For if the husband, under the facts of that case, continued to live separate and apart, he could avoid any contact with his spouse and forever deny her the right to a divorce. We think this reasoning, applied conversely, supports the right of this plaintiff to bring a divorce action as he has here and to allege the repulse of his efforts at reconciliation by the defendant as a ground for divorce. We say this for the reason that if a wife, having obtained a decree of separate maintenance, may forever repulse attempts at reconciliation by the husband, she may as

effectively continue the marriage relationship without cause as the husband could have if the reasoning of Prough v. Prough were not followed. Certainly, we should not provide by the decree of separate maintenance a shield for the wife against an action for divorce if the husband makes a bona fide attempt to reconcile with his wife and thus alleviate and extinguish the grounds for the decree of separate maintenance. Her continued refusal to undertake reconciliation in the face of such bona fide efforts at reconciliation must justify his seeking a divorce, else the effect of her decree of separate maintenance will, under the reasoning set forth above, constitute a more binding relationship between the parties than even the marriage relationship itself.

The closest case perhaps to our factual situation is Brady v. Brady, Mo.App., 71 S.W.2d 42, which is cited by appellant. There a divorce was granted to a defendant-husband on the ground of desertion. The desertion consisted of the plaintiff-wife's insistence upon unreasonable conditions before acceptance of the husband's offer to reconcile. These offers and the wife's repulse of them by her unwarranted conditions followed a dismissal of a separate maintenance action, and the decree was based on the events following that suit. The decree was affirmed on appeal.

On the basis of this reasoning and the principle of the cases we have cited, we hold that a husband who can show to the satisfaction of the trial court bona fide attempts at reconciliation unreasonably repulsed by his wife may, upon passage of the statutory period for desertion, base his action for divorce upon such failure to reconcile as a desertion. We likewise determine that the facts of a prior separate maintenance decree in favor of the wife affects the husband's right to bring such an action only upon the basis of limiting the evidence concerning his grounds for divorce to those events occurring subsequent to the entry of such a decree.

What we have said brings us to the central issue which we believe must be resolved in this case. That is the factual basis for the plaintiff's grounds for divorce. The critical question is whether the evidence in this record supports a finding that the husband attempted reconciliation with his wife after the decree of separate maintenance and more than a year prior to the filing of his divorce action and that she unreasonably refused such reconciliation. If such findings are supported by evidence in this record, then the main thrust of appellant's argument, that the plaintiff has not shown any ground for divorce not merged in the judgment of the prior separate maintenance action, is lost.

■ At the time of the hearing of the present case, both the husband and the wife were present in court personally and by counsel; the husband alone testified. His evidence is garbled and confusing in some respects. We note that he is 78 years of age and that it is apparent that he has difficulty either in his hearing or comprehension. We note, particularly, he apparently misunderstood the word, "separately" for "suffered" and expressly admitted confusion about dates. This rambling and confusion in his answers does not make his testimony incredible. McGehee v. McGehee, Mo.App., 448 S.W.2d 300, 304.

It will be helpful to note one other fact apparent from the record, that the plaintiff and defendant live immediately adjacent to each other and have done so since their separate maintenance action was determined. Opportunity and occasion for discourse and perhaps dispute were shown to have existed and occurred.

The transcript is short, consisting of only 25 pages of testimony. Those 25 pages represent four direct examinations and three cross examinations of the same witness, so the evidence is somewhat garbled. In order to place this record in perspective, we extract therefrom certain portions of the testimony out of order and place them so as to show the factual picture as we understand it from the whole transcript.

The plaintiff had testified on direct examination concerning a gun incident. On his last cross examination, he was asked when this occurred. His answer was:

> "About three years ago. They have it on record.
>
> Q. How many years ago?
>
> A. About three years ago."

Immediately following that, on redirect examination, plaintiff's lawyer asked him:

> Q. You're saying *this is during the time* that *you were trying to reconcile with your wife or get back together?*
>
> A. *Yes.*

At another point on his redirect examination, the plaintiff was asked:

> Q. You are telling the Court that when you would go over to her place to try to patch this up, that was since *the separation in 1966?*
>
> A. Yes.
>
> Q. And you are clear on that?
>
> A. Yes. *I tried my best. I wanted a wife. I really cared for her and I like to make things comfortable for her.*
>
> Q. And *since September 1966* you have not lived with your wife, Mrs. Lovingood?
>
> A. I have not lived steady but I have gone back and tried to patch things up.
>
> Q. You haven't lived with her?
>
> A. No, I have not lived constantly with her.

On cross examination:

> Q. And you're telling me you spent two days or nights with her *since September, 1966?*
>
> A. Yes.
>
> Q. Living in her house?

A. Yes, trying to patch it up, to see if we could still make it.

Q. When?

A. *Since 1966 and 1967.*

Q. When did you spend any time with her?

A. That's what I'm telling you now. During the nights I would go over and see if we could patch it up and come to some agreement.

Q. Then you would spend the night there or go back to your home?

A. Right back to my home.

Q. That's at the building?

A. That's right.

Q. All you did was *attempt to discuss reconciliation* with her?

A. *I tried to.*

Q. *After that failed* you went back to your home?

A. Nothing else for you to do. (Emphasis added.)

■ We believe that the foregoing when placed in proper perspective and considering the age of the plaintiff and his apparent confusion is evidence which supports a finding that beginning approximately three years before this divorce action, filed in July, 1969, this plaintiff made repeated attempts to reconcile with his wife. It is also a fair inference from his testimony that those attempts at reconciliation occurred more than a year prior to the filing of the present case. There is nothing to indicate that these efforts were not bona fide. There is no showing of his consent to the separation. The wife did not take the stand to show any basis for her refusal to reconcile or to deny plaintiff's evidence on either the fact or the bona fides of his efforts to reconcile with her. She did not deny her counsel's assertion the efforts failed. No evidence indicates plaintiff caused them to fail. We infer from this defendant repulsed them. There is some evidence which leads to an inference she desired to continue the marriage relationship until the death of plaintiff in which event she could claim her right in his property as the surviving spouse.

The evidence is far from the quantum of proof we might expect or require in a truly contested case. We believe, however, that the evidence of plaintiff, like that of the plaintiff in Hearn v. Hearn, supra, is entitled to more weight and credibility where the defendant-wife being present does not testify and does not deny, even by pleading, plaintiff's petition.

Upon the basis of the only evidence before him, the trial court found the issues for plaintiff. We cannot say his finding was plainly erroneous. The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion by DIXON, C., is adopted as the opinion of the Court.

All concur.